## M. C. HOWARD VS. O. T. STEPHENS.

MARRIED WOMEN : *Separate estate. Responsibility as partners. Case in judgment.*
Mrs. H. and one W. purchased a hotel. Mrs. H. furnished all the money, but the deed was made to her and W. jointly. Mrs. H.'s husband, without her consent, executed a deed to the property to S., in exchange for a half interest in a mercantile firm, in which deed W. joined. The firm failed and made an assignment for the benefit of creditors. A bill was filed by Mrs. H. to cancel the deed made by her husband to S. *Held*, that the deed made by the husband of Mrs. H. to S. did not divest the title of Mrs. H.; that a married woman holding separate property, under the statute of 1857, has not the capacity to enter into a copartnership contract, nor to become liable for firm debts.

APPEAL from the Chancery Court of *Holmes* County.

Hon. J. J. HOOKER, Chancellor.

There is a very full statement of the facts in the opinion of the court.

The following errors are assigned :

1. The court erred in ordering an account for defendant.

2. In not ordering an account for rents and profits for the complainant.

3. In not awarding restitution to complainant.

4. In overruling complainant's exceptions to the account of the master, showing $5,260 due defendant.

5. In decreeing a specific lien on the lands in controversy in favor of defendant.

6. In taxing complainant with any of the costs.

7. In rendering the final decree for defendant instead of the complainant.

*Harris & George*, for complainant:

The deed to Stephens, so far as Mrs. Howard is concerned, is a simple forgery, and the acknowledgment certified by the justice of the peace was also false. She did not convey or attempt to convey the property, nor did she make any contract; yet it is held to be incumbered with $5,260. She had no power to become a partner in the firm, nor could she create a lien on her property by such a contract. Two void contracts cannot create one valid one.

This is the position of defendant and of the court below. We believe it is unprecedented. Suppose, 1st, the deed had been valid; she would be liable to have such a decree rendered against her; but the deed is a nullity. 2nd, suppose her purchase of Stephens' interest in the store had been valid in law, then there would have been no lien on her estate; she would have been simply a debtor, and her estate, not in virtue of any lien, but because she was debtor, would have been liable.

It is said she must do equity or the court can give no relief. This maxim never requires the performance of a *void* contract. The court simply says it will not give relief upon a merely voidable contract. But in the case at bar there was no contract at all. It is argued that, as to Weathersby's half interest in the property, Stephens has the legal title, and the court will not allow him to be deprived of it unless Mrs. Howard returns what she received on that account. This position is untenable. In the first place, the court decides the whole deed to be void

and orders it to be canceled, and this position is well warranted by the testimony. In the second place he held it only by a naked legal title for Mrs. Howard, who had paid all the purchase money, they being partners.

The deed made to consummate the trade he supposed was made by her, and, as he supposed, by her request.

Stephens says he supposed the whole belonged to Mrs. Howard, and that she would make the deed for the whole. He says she promised to make the deed. Stephens got only the legal title held by Weathersby.

It is assumed that Mrs. Howard had the equities, or the real beneficial interest, in the half held by Weathersby. The legal title not being in a trustee under a deed, her interest falls under the influence of the limitations imposed by statute, and it would seem that, under those circumstances, the deed of Weathersby could not be effectual to bind her interest unless she assented in a manner pointed out by the statute.

*J. A. P. Campbell*, for appellee :

After presenting the facts, insisted that the only question is whether, under the rules authoritatively established in courts of equity, the decree can be upheld. If so, this court will be prompt to affirm the decree ; if not, it must be a matter for deep regret that in this enlightened age the rule of decision in courts of equity is at war with the suggestions of morality and the dictates of right reason. The appellee invokes the doctrine of equitable estoppel to support the decree, and to prevent appellant from annulling the conveyance to him without her paying back to him what she received from him. Counsel is well aware of the protection afforded to married women, and the legal disabilities of coverture designed for their protection. But the doctrine of equitable estoppel applies to them, as well as to persons *sui juris*, and in this state and in this court this just and wholesome doctrine has not been carried further than justice and sound policy fully warrants. Lee *v.* Gardiner, 26 Miss., 521 ; Kemp *v.* Pintard, 32 ib., 324 ; White *v.* Brooks, 45 ib., 542 ; Handy *v.* Noonan, 51 ib., 166. These cases

16

decide that an adult married woman, receiving the proceeds of the sale of land in which she had an interest as heir, is estopped from claiming the land. The decree should not be disturbed for the reason of the rules invoked. Herman on Estoppel, §§ 336, 416, 494, 497; Donaldson *v.* Holmes, 23 Ill., 85; 4 ib., 269; Swartz *v.* Sanders, 46 ib., 18. Concede her want of capacity to contract—it only strengthens my position.

Infants or married women will be estopped from profiting by their own wrong or fraud. Herman on Estoppel, § 494, citing Evans *v.* Buckrell, 6 Ves., 174; Fulton *v.* Moore, 25 Penn., 468; Drake *v.* Glover, 38 Ala., 382; Davis *v.* Trexel, 8 B. Mon., 343; Wright *v.* Arnold, 14 ib., 458; Higgins *v.* Ferguson, 14 Ill., 463; McCullough *v.* Wilson, 21 Penn., 476.

SIMRALL, C. J., delivered the opinion of the court.

It is conceded by the appellee that the deed under which O. T. Stephens claims the Durant Hotel, and lots attached thereto, is void as to the appellant, Mrs. M. C. Howard. But, as the legal title to the property stood in the name of Mrs. Howard and Weathersby, it is claimed Stephens acquired the half interest of Weathersby.

It appears that Mrs. Howard and Weathersby bought the property for the purpose of conducting the hotel business in partnership. Hence the deed was made to them jointly. But the entire purchase money was paid by Mrs. Howard.

In the negotiations between the husband of Mrs. Howard and Stephens, which resulted in Stephens acquiring the interests which gave rise to this suit, it was distinctly recognized by him that Mrs. Howard was the real owner; that Weathersby was only connected with the title nominally, and would convey on any consideration Mrs. Howard might receive, and to any person she might indicate. So completely did Stephens regard him as having no interest, that he had no interviews or communications with him, either in reference to the price or title. He

bargained throughout on the assumption that Mrs. Howard alone was owner, and that Weathersby's title was entirely subject to her disposal. It is quite certain that Stephens obtained the conveyance from Weathersby exclusively on the bargain and inducements between himself and Mrs. Howard, and because Weathersby thought that he was passing title to a purchaser from Mrs. Howard. If, therefore, there was no sale and conveyance by Mrs. Howard, Stephens ought not to be allowed to set up any interest derived from Weathersby's deed.

The prominent circumstances attending the transaction are these :

In the autumn of 1869 there was a great deal of sickness in the family of Mrs. Howard ; one of her children died. Because of this she became dissatisfied with the hotel, was anxious to sell, and determined to retire to her farm in the country. Mr. Howard was anxious that she should sell the property to Stephens for his half interest in the mercantile business of Helfin & Co., in the same town. Mrs. Howard was unwilling to make the trade, and refused, at the solicitation of her husband and Stephens, to make the conveyance. Mr. Howard, after failing to induce his wife to make the deed, himself executed a conveyance in her name.

It was represented that there was a stock of goods on hand worth about $8,000 ; debts to about $2,000 owing, etc. Whilst persuasions were being addressed to Mrs. Howard, she stated to Stephens that she heard that Helfin & Co. were not solvent, to which Stephens replied that Helfin was one of the most solvent men in town.

Mr. Howard, who was evidently not a merchant and but little conversant with that sort of business, looked over the goods with the parties interested, and consented that the stock amounted to the sum above named. No inventory of stock was taken, nor were the usual means employed to ascertain the exact condition and value of the business.

It would appear from the testimony that nothing passed directly between Mrs. Howard and Helfin. No articles of

agreement were entered into. Things remained in this loose, unsettled condition for a few months, when Mr. Howard proposed that he should be accepted as a partner in place of his wife, when articles to that effect were signed, which related back to the inception of the connection. The business was continued for a little more than a year, when it ended in insolvency and an assignment for creditors. It is not averred or proved that this calamity was referable to the mismanagement or misappropriation of the assets. One or more of the witnesses say that the stock of goods, when Stephens sold out, was composed largely of remnants—the accumulation of three or four years, and not worth more, according to one estimate, than forty per cent., and of another, of fifty per cent., of the sum agreed on. It is probable that the failure was caused by bad collections, and the personal expenses of the partners.

Mrs. Howard derived no benefit from the stock of goods. Her account for merchandise taken up was about $750. But she turned over, as a credit, twenty-three bales of cotton. If she owes any balance, that passed by the assignment for the benefit of creditors.

Under the statute respecting the separate property of married women, and their capacity to contract, Mrs. Howard could not make a copartnership contract with Helfin, nor become liable to the firm creditors. That was *ultra vires*.

Whilst the chancellor held the deed to be void, and that she should be restored to an unincumbered title to the hotel property, he charged her with $——, the value of a half interest in the merchandise business with Helfin. Counsel, pressed by the difficulty which arises from her incapacity to incur a copartnership relation, and the responsibility incident to it, in argument attempted to uphold this part of the decree on the ground of equitable estoppel. Since she received Stephens' property—his half interest with Helfin—it would be unconscientious that she should enjoy that, and at the same time recover back the hotel property.

Stephens hardly appears in such character as to successfully advance that claim. He was entirely aware that Mrs. Howard

repudiated the exchange of property so persistently urged upon her. Her husband more than once informed him that she would not make the trade and execute the deed, and that the trade must be ended. To that he replied that he would take the risk. In truth Mrs. Howard never did become the vendor. Stephens went into possession of the premises after the family went to the country, with the hope and expectation that Mr. Howard might persuade his wife to agree to the bargain and execute a deed. ·

Mrs. Howard has not consumed or used any of the merchandise for which she did not pay, unless twenty-three bales of cotton were of less value than $750—the amount of her account. It is not shown that any act of omission or commission by herself or husband contributed to the insolvency. There remains nothing for her to restore to Stephens.

We have adopted the principle as sound, resting on conscience and morality, that a *feme covert* can not annul her purchase of property, repudiate the payment of money, and, at the same time, retain the property. But this is not, in its characteristics, that sort of a case. Mrs. Howard did not buy the merchandise interest in exchange for her real estate. Stephens was advised she would not make that bargain. But he seeks to clothe himself with the title to her property by means of the unauthorized act of the husband. If Mrs. Howard had received substantial benefit or profit from the mercantile firm, or if she had any of its assets subject to her control, he might with great show of equity claim that to that extent she should account to him. That would be the utmost extent of his right, if he presented himself as a purchaser, acting in good faith.

We think that, in the circumstances of this case, Mrs. Howard ought to be restored in her title to the *statu quo*, and that she ought not to be held liable for the $200 ; and that the proof shows that there is no property, profits, or money derived from the mercantile business for which she ought to account.

Decree reversed and cause remanded.