JOHN W. HAGGETT *vs.* FRANCES E. HURLEY, and another.

Knox.     Opinion May 28, 1898.

*Husband and wife. Partnership. Rights of Married Women. R. S., c. 61, § 4. Laws of 1821, c. 57, § 9. R. S. 1841, c. 87, §§ 29, 31, 32. Stat. 1844, c. 117, §§ 1, 2, 3. Stat. 1847, c. 27. Stat. 1848, c. 73. Stat. 1852, c. 227, c. 291. Stat. 1855, c. 120. Stat. 1856, c. 250. Stat. 1857, c. 59. R. S. 1857, c. 61, § 6. Stat. 1862, c. 148. Stat. 1863, c. 214. Stat. 1866, c. 52. Stat. 1876, c. 112. Stat. 1883, c. 207. Stat. 1889, c. 176.*

A new statute will not be construed as intending a reversal of long established principles of law and equity unless such intent unmistakably appears.

The common law disabilities of a married woman have not been so far removed by statute as to empower her to form a business partnership with her husband, and thereby subject her separate estate to debts contracted by the partnership.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

This was an action of assumpsit on account annexed for a quantity of kiln wood. The writ was against William P. Hurley and

Frances E. Hurley, who are husband and wife, as copartners under the firm name and style of "The Rockland Lime Co." Both defendants seasonably filed their affidavits denying the partnership alleged in the writ. Before trial William P. Hurley became defaulted and the defendant, Frances E. Hurley, pleaded the general issue.

At the trial the plaintiff contended and introduced testimony which he claimed tended to prove that when his account accrued Frances E. Hurley, the defendant, was a copartner with her husband, William P. Hurley, in the business of manufacturing lime and that the wood charged in the account annexed to the writ was sold by him to said copartnership. The defendant, Frances E. Hurley, denied that she was such copartner, and contended that the wood charged in the account was sold to her husband, William P. Hurley, individually.

The defendant, Frances E. Hurley, requested the presiding justice to instruct the jury that the defendant, being a married woman, could not lawfully be a copartner in said business with her husband, said William P. Hurley.

The presiding justice refused to give such instruction. The verdict was in favor of the plaintiff and against the defendant, Frances E. Hurley.

To such refusal to instruct, the defendant, Frances E. Hurley, took exceptions.

*C. E. and A. S. Littlefield; and Mervyn Ap Rice*, for plaintiff.

"The wife having the general and unrestricted power of making any and all contracts in relation to her estate, its sale, lease, improvement, with the further right to make contracts for any lawful purpose, may contract with whomsoever she may choose. She may contract with her husband equally as with any one else." *Blake* v. *Blake*, 64 Maine, 177.

Married women can now "make any lawful contract." *Wentworth* v. *Wentworth*, 69 Maine, 247. Ever since 1852 in this state husband and wife have had the right of conveying property directly to each other. *Allen* v. *Hooper*, 50 Maine, 371.

The states where the courts have held that the wife cannot make a contract of partnership or other contract with her husband are Arkansas, Florida, Indiana, Maryland, Massachusetts, Ohio, South Carolina, Texas, Washington, West Virginia and Wisconsin. The states which hold otherwise are New York, Illinois, Alabama, Colorado, Georgia, Kentucky, Michigan, Missouri, Oregon and Vermont. There is a preponderance of authority in favor of the wife's power to become a partner with her husband in a business partnership.

Counsel cited: *Suau* v. *Caffe*, 122 N. Y. 308, (9 L. R. A. 593); *Hamilton* v. *Hamilton*, 89 Ill. 350; *Dressel* v. *Lonsdale*, 46 Ill. App. 455; *Dunifer* v. *Jecko*, 87 Mo. 284; *Schofield* v. *Jones*, 85 Geo. 823; *Schlapback* v. *Long*, 90 Ala. 526; *Wells* v. *Caywood*, 3 Colo. 487; *Snell* v. *Stone*, (Ore.) 31 Pac. Rep. 663; *Louisville, etc., Co.* v. *Alexander*, 16 Ky. L. R. 306; *Lane* v. *Bishop*, 65 Vt. 575.

The Massachusetts court have uniformly held that no valid contract can be entered into between husband and wife. In *Lord* v. *Parker*, 3 Allen, 127, cited by our court in 87 Maine, 579, the court recognizes what they call a "sole and separate property" in the wife; and this appears to be an element in reaching the conclusion, as they say, "the property invested in such an enterprise would cease to be her 'sole and separate property.'" A husband in Massachusetts is forbidden by express statute from conveying property directly to his wife. *Porter* v. *Wakefield*, 146 Mass. 27.

See *Towle* v. *Torrey*, 135 Mass. 89, in which the court say:— "While the legislature has removed from a wife many of the disabilities she was under at the common law, and has authorized her to hold property as a feme sole, to deal with it as such, and to sue and be sued in relation thereto, it has been carefully provided always, in the acts by which this has been done, that nothing therein contained shall be construed as authorizing contracts between husband and wife, conveyances or gifts to each other, or as giving the right to either to sue or be sued by the other. Whatever rights they had in these respects remain the same as they stood at common law before this legislation commenced." In Massachu-

setts the statute in effect prohibits any and all contracts between husband and wife. In Maine the statute confers the power to make any and all contracts. The cases opposed to our contention are based upon statutory or constitutional provisions not like or so broad as our own, and therefore entitled to but little weight in determining the case at bar.

The cases in Maryland, West Virginia, Texas, Ohio and Indiana, are based upon the proposition that a married woman can enter into no personal contract.

*W. H. Fogler and J. E. Hanley,* for defendant.

Statutes regulating "rights of married women" being in derogation of the common law have always received a strict construction by this court. *Hobbs* v. *Hobbs,* 70 Maine, 381.

The plaintiff's contention has been decided adversely in Massachusetts under statutes enlarging the powers of married women to a greater degree than in this state. *Lord* v. *Parker,* 3 Allen, 127; *Lord* v. *Davidson,* Ib.· 131; *Plumer* v. *Lord,* 5 Allen, 460; S. C. 7 Allen, 481.

Counsel cited:— *Artman* v. *Ferguson,* 73 Mich. 146, affirmed in *Vail* v. *Winterstern,* 94 Mich. 231; *Haas* v. *Shaw,* 91 Ind. 384, (46 Am. Rep. 607); *Seattle Board of Trade* v. *Hayden,* 4 Wash. 263, (31 Am. St. Rep. 919); *Payne* v. *Thompson,* 44 Ohio St. 192; *Horneffer* v. *Duress,* 13 Wis. 603; *Duress* v. *Horneffer,* 15 Wis. 195; *Kaufman* v. *Schoeffel,* 37 Hun, 140; *Hendricks* v. *Isaacs,* 117 N. Y. 411; *Chambovet* v. *Cagney,* 35 N. Y. Sup. Ct. 474, Sedgwick, J.; *Fairlee* v. *Bloomingdale,* 14 Abb. (N. Y.) N. Cas. 341; S. C. 24 Am. Law Reg. (N. S.) 648, notes 652–659; *Noel* v. *Kinney,* 15 Abb. (N. Y.) N. Cas. 403; Bates, Partnership, § 139; 2 Bish. Married Women, 435.

SITTING: PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, JJ.

EMERY, J. The important and decisive question is whether a married woman can enter into the relation of a business partnership with her husband, and thus subject herself and her separate

estate to liability for the partnership debts contracted in the name of the partnership. The plaintiff, of course, concedes that the affirmative of this question is without support from the common law and must be based solely on some enabling statute. He contends however that it is fully sustained by the statute, R. S., c. 61, § 4, the full text of which is as follows:—

"Sec. 4. A husband married since April 26, eighteen hundred and fifty-two, is not liable for the debts of his wife contracted before marriage, nor for those contracted afterward in her own name, for any lawful purpose; nor is he liable for her, torts committed after April twenty-six, eighteen hundred and eighty-three, in which he takes no part; but she is liable in all such cases; a suit may be maintained against her, or against her and her husband therefor; and her property may be attached and taken on execution for such debts and for damages for such torts, as if she were sole; but she cannot be arrested."

The " all such cases " in which she is by the statute made liable are three: (1) " her debts contracted before marriage," (2) " her debts contracted afterward (after the marriage) in her own name," and (3) " her torts committed after April 26, 1883, in which her husband took no part." The statute thus makes a distinction between her debts contracted before and those contracted after marriage. As to the former she is made liable without restriction. As to the latter her liability is confined to those contracted " in her own name." This phraseology alone at the outset should make the court hesitate to declare that she is liable for a debt contracted after marriage not by her in her own name but by the partnership in the partnership name. The intention of the legislature to subject her and her separate estate to such a liability is not clearly apparent from the statute in its present form.

The plaintiff, however, contends that the language of the present statute is but a consolidation of statute of 1866, c. 52, which reads as follows: " The contracts of any married woman, made for any lawful purpose, shall be valid and binding, and may be enforced in the same manner as if she were sole." This statute read by itself may seem very broad and inclusive. Read in connection with the

whole body of the law it will seem less so. For instance the statute declares in the most unlimited terms that her contracts "may be enforced in the same manner as if she were sole," yet her husband cannot enforce her contracts with him in any manner. *Hobbs* v. *Hobbs,* 70 Maine, 381. Again a contract to marry is ordinarily for a lawful purpose, but this statute would not empower a married woman to make such a contract.

No single statute should be interpreted solely by its own words. Upon enactment it becomes a part of, and is to be read in connection with, the whole body of the law. Its interpretation is to be in the light of the general policy of previous legislation and of the long established principles of law and equity. There is a presumption that by the new enactment the legislature intended some progress along the line, and did not intend any reversal, of such established policy and principles. No new statute will be construed as intending such a reversal unless that intent unmistakably appears. *Landers* v. *Smith,* 78 Maine, 212; *Cummings* v. *Everett,* 82 Maine, 260.

That, under the statute of 1866, a married woman may make a contract with her husband need not be questioned here. That such an authority to make contracts includes 'the power to enter into the relation of a business partnership with her husband, so as to subject herself and her separate estate to partnership liabilities, is more questionable. A business partnership between husband and wife is scarcely within the strict letter of the statute. The term "contract" in its ordinary legal sense implies two opposite parties, or two opposite sets of parties. Each has in the subject matter of the contract a right distinct and different from that of the other. Indeed, so marked is the difference, the right of the one is the duty of the other. If one is the vendor, the other as to the same subject matter is the vendee. If one is bailor, or employer, or creditor, the other is bailee, or employee, or debtor. Again, a legal contract implies a right of action at law for its breach. The law of contract was first developed through the allowance of actions for the breach. A right of action is often the test of the existence of a legal contract. Without such right it is

difficult to conceive of a binding contract. Neither in a contract, nor in the part ownership of property, is there any idea of community of interest nor any idea of an entity apart from the individual contractors or owners. The right or interest of each part owner is separate and distinct from that of the others.

Partnership is often called a contract, as marriage is often spoken of as a contract, but it is rather a relation, a status, somewhat as marriage is a relation or status. Parsons on Principles of Partnership, § 101.

In a partnership there are no opposite parties with separate and different interests in the subject matter of the partnership. There is a community of right and interest. Neither partner owns any proportional part of any article of partnership property; each has dominion over the whole article and over the entire partnership property. Upon the death of either partner this dominion remains in the survivors. So long as the partnership continues, no right of action at law exists between partners as to any partnership property or transaction. Much like marriage partners, business partners are left to adjust themselves to one another as best they can until they call upon the courts to dissolve the relation and administer the estate. Again, in a partnership there is a notion of an entity apart from the individual partners. In the Roman law the partnership was known as "societas." There is individual property and partnership property. A partner may owe the partnership and vice versa. A partnership usually has dealing and keeps accounts with each partner. In those jurisdictions where the Roman law is the basis of the jurisprudence, the entity of the partnership is frankly recognized and actions are allowed between the partner and the partnership. *Succession of Pilcher*, 39 La. Ann. 362. *Liverpool, etc., Navigation Co.* v. *Agar*, 14 Fed. Rep. 615.

In common law jurisdictions this entity is acknowledged, at least in equity, and to some extent at law, in spite of the technical rule that no action at law can be maintained between a partner and a partnership. *Pooley* v. *Driver*, 5 Ch. Div. 458; *Curtis* v. *Hollingshead*, 14 N. J. L., 402, p. 410; *Walker* v. *Wait*, 50 Vt. 668.

As to the character of the partnership relation, see also *Dwinel* v. *Stone*, 30 Maine, 384; *Woodward* v. *Cowing*, 41 Maine, 9.

It seems apparent that there is much difference between the partnership relation and the ordinary contract. So far as partnership is a contract, it is sui generis, and is not necessarily, or even ordinarily, brought to the mind by the use of the term "contract." The legislature in using the word "contract" in this statute of 1866, without further definition or expression, has not, we think, expressed in terms an intent to authorize a married woman to enter into a business partnership with her husband. But however unrestricted the term in the original statute, it should be noticed that in the revision, R. S., c. 61, § 4, the term is expressly restricted to contracts in her own name. This restriction clause would seem to exclude contracts made in the name of the partnership or in any other name than her own. The plaintiff's proposition certainly falls outside of the strict letter of the present statute.

Is such an authority within the spirit of the statute?

To determine this question we shall consider the rules and reasons of the anterior law, the character and trend of its successive modifications and the reasons for them, and the course, purpose and policy of legislation upon the subject. If the purpose of a course of legislation can be perceived, it is always to be presumed that the legislature intends to further that purpose rather than to abandon it.

Before the recent statutes it had been for more than a thousand years the settled legal policy of the Teutonic nations, at least, to exclude a married woman from all participation in business affairs. The husband upon the marriage took over all her personal property and the use of her real estate for his life. He became responsible for her support, her debts and her torts. She was not responsible for any debts, nor for any torts committed by her under her husband's influence. There was of course for this rule a reason which seemed sufficient for centuries. There is no warrant for saying that this reason was in the harshness or selfishness of the male sex, or in any desire to exploit the female sex. Though in early times manners were ruder and life harder, the family and marital affec-

tions do not appear to have been weaker. The strength of these among the Teutonic races, as compared with their weakness under the liberal marriage laws of the Roman Empire, excited the admiration of the historian. The reason appears to be in the almost instinctive desire to insure the unity,—the singleness of the family.

There is a general consensus of opinion that the family existed before the state and that autocratic family government was the first of all forms of government. It seems to have been regarded as an axiom by publicists for centuries, that the family was the basis of the state and that the destruction of the family would be the destruction of the state. To insure the unity and preservation of the family, there seemed to be thought necessary a complete identity of interests and a single head with control and power. The husband was made that head and given the power, and in return was made responsible for the maintenance and conduct of the wife. To prevent any clashing of interests between husband and wife, to prevent any divisions or separations in the family, the wife was disqualified during coverture from having any business interests and from subjecting her personal estate to the claims of creditors. Such at least was the common law.

This policy or rule undoubtedly worked hardship in individual cases; some husbands were incompetent, some were beyond the seas, some exercised rigidly their marital authority over the property of the wife but did not apply it to her support. The courts of equity began early to relieve and guard against these hardships,—by recognizing trusts for married women,—by recognizing her conveyances and even her contracts when clearly necessary for her support in the absence of her husband,—by refusing aid to the husband in recovering the wife's property until he create a trust fund for her maintenance,—and by other means. The doctrine of the wife's separate estate thus grew up in equity and was cherished by the courts, but rather to insure the wife's support under the law than to weaken the law. Every attempt of the husband or of third parties to charge this separate estate was resisted. The wife was not allowed to charge it unless clearly for her own benefit. The

idea of any legal relation between husband and wife other than that of marriage was not entertained.

In late years the legislatures have recognized these equitable doctrines, and have modified the law presumably in the same direction and for the same purpose, to more fully insure the maintenance of the married woman. An examination of the course of legislation in this state will show this to be the general purpose. The first statute was sec. 9 of c. 57 of Laws of 1821, which empowered the court to authorize the wife to make contracts in her name and sue in her name during the time her husband may have abandoned her and absented himself from the state. In 1841 by R. S., c. 87, § 29, this former statute was made to include the case of a wife whose husband was in the state prison. By § 31 of the same act, the land damages for land of the wife taken under eminent domain were to be secured to the wife's separate use. By sections 31 and 32, it was provided that a married woman coming into the state without her husband, he never having lived with her in this state, should have power to contract as if sole until his arrival and resumption of his marital rights. The act of 1844, c. 117, was entitled "An act to secure to married women their rights in property." Section 1 provided that a married woman could become seized and possessed of property in her own name provided the same did not come in any way from her husband. Section 2 provided that when a woman possessed of property married, the property should continue hers as her separate property exempt from liability for the debts of the husband. Section 3 authorized the wife to release to the husband the control of the property and the right to dispose of the income " for their mutual benefit." By statute of 1847, c. 27, the wife was allowed to acquire property from her husband except as against his creditors. By statute of 1848, c. 73, she was granted the right to use all processes to enforce and defend her rights of property under the statute of 1844. By section 3 of the same statute she was authorized to dispose of her estate by will and if she died intestate her estate was to descend to her heirs. By statute of 1852, c. 227, she was empowered to dispose of her separate estate, acquired under former acts,

in her own name as if unmarried. By statute of same year, c. 291, the husband was freed from liability for his wife's debts though he might still be joined in the suit against her. The wife could defend alone or with her husband, but was to be free from arrest. By statute of 1855, c. 120, she was again authorized to convey her separate estate by her separate deed. In 1856, however, by c. 250, this right of conveyance was restricted to property not acquired from her husband or his relatives. As to such estate the joinder of the husband was required. By statute of 1857, c. 59, she was authorized to receive and sue for the wages of her personal labor performed for others than her own family. Revised Statutes 1857, c. 61, § 6, of the same year authorized marriage settlements. By statute of 1862, c. 148, she was authorized to engage in business upon her own account, and her contracts therein were made binding and enforceable against her separate property, but the husband and his property were to be exempt from liability therefor.

By statute of 1863, c. 214, she was authorized to take and hold property from her husband as security for a bona fide debt, or for payment for money actually loaned. Next came the statute of 1866, which has been quoted in the early part of this opinion, and upon which the plaintiff relies. The next statute was that of 1876, c. 112, granting the wife all processes for the defense of her property and personal rights without control by her husband. By the statute of 1883, c. 207, the husband was freed from liability for his wife's torts in which he took no part. The statute of 1889, c. 176, limited the necessity of the husband's joinder in conveyances to property conveyed by him directly to his wife. Here legislation upon the subject has apparently come to an end.

The main purpose running through all this legislation seems to have been to enable a married woman to acquire, hold, and dispose of a separate property, a property which should be entirely free from her husband's control. This purpose is made more manifest from the revisions of the statutes since 1866. If the statute of 1866 was intended to have the sweeping, comprehensive effect claimed for it by the plaintiff, it must have been understood to have superseded all the previous legislation designed to enlarge a

married woman's rights and powers. The previous enlarging acts would have been regarded as obsolete and dropped from the statute book upon its revision. But this does not seem to have been the understanding of the legislature. We find nearly all these prior statutes twice re-enacted in the revisions of 1871 and 1883 and they are still upon the statute book. R. S., c. 61, §§ 1, 2, 3, 4, 5, 7, 8, 9 and 10. The statute of 1866 reappears in § 4, which enacts that a married woman shall be liable for all her debts contracted before marriage, and for those contracted afterward "in her own name for any lawful purpose." The words "in her own name," were not in the act of 1866, and seem to have been added to bring that act into harmony with preceding acts. They seem to limit her power to contract to such contracts as she may make in her own name. While mere consolidation, or condensation of the language of a statute in revision is not to be presumed to indicate a change of meaning, the addition of restrictive words not found in the original statute may indicate an intention or understanding that the statute is restricted in its effect. The words "in her own name" seem to indicate that the wife's power to contract is not unlimited,— that it is confined to her separate business or estate. The legislature by twice re-enacting most of the former statutes, and by using the words "in her own name" in the revisions, has certainly indicated that it did not understand that all disabilities and restrictions upon married women were removed by the act of 1866. While the legislative construction of a statute is not binding upon the court it is entitled to great respect.

In enacting these statutes the legislature was aware that they could not be extended by implication, but would be construed strictly as in derogation of the common law, and as modifying a long approved policy. Such was the settled rule of construction in this state when the statute of 1866 was passed. *Swift* v. *Luce*, 27 Maine, 285; *Newbegin* v. *Langley*, 39 Maine, 200; *Brookings* v. *White*, 49 Maine, 479. It has since been emphatically affirmed in *Hobbs* v. *Hobbs*, 70 Maine, 381, and *Cummings* v. *Everett*, 82 Maine, 260.

In view of this familiar rule of construction, it would be reason-

able to expect that if the legislature really intended the act of 1866, as recast in the revised statutes, to extend beyond the contract of a married woman in her own name and to include the power of entering into a business partnership with her husband, to contract in a firm name and to subject herself and her separate estate to all the incidents, risks and liabilities of such a relation, it would have used language more pointedly indicating such an intention. Up to that time, the policy of the legislature had been to insure the maintenance of the wife and the security of her separate property from her husband's control, following out the equities suggested by the courts. There was manifested no intention to interfere in any other respect with the marriage relation, except to free the husband from liability for his wife's debts or torts. The husband was still left the head of the family with the duty of support and the right to direct the family life. The importance of family unity was still recognized. Though husband and wife might each have separate property or business interests, this was for the protection of the wife against the misfeasance or nonfeasance of the husband as to his duty.

There seems to be an incongruity between this policy of the legislature and the incidents of the partnership relation, and also an incongruity between these and the incidents of the marriage relation. In a partnership all the partners are equal in power and liability. A partnership acting through one partner may commit torts as well as make contracts, and each partner may thus be made liable for torts as well as debts caused by another partner. By entering into a business partnership with her husband the wife practically subjects her separate property and herself to liability for debts and torts caused by him,—the very liability the legislature, as well as the court, had been striving to prevent. Ordinarily the husband would in fact carry on the business, and by reason of his position as husband would have an influence over his partner and the business not justified by any superior business capacity. The partnership relation could not be kept distinct from the marriage relation. The business partners could not forget they were also husband and wife. The essential element of perfect equality

between business partners could not exist. The wife would be at a-disadvantage. The husband would still be the head of the family with marital authority. The assent he could not win from his business partner, he might extort from his wife. The result might often defeat the very purpose of the enabling statutes.

True, it may be best for the family and the state that the wife be permitted to enter into this additional relation with husband, and be subject to all its consequences. If we thought the legislature had clearly intended such an almost revolutionary change in the law of husband and wife, we should not assume to question its wisdom; but in view of all the foregoing considerations, until it uses language more explicit upon this point than it has heretofore used, we cannot think that such was its intention.

The plaintiff's counsel cites the cases *Blake* v. *Blake*, 64 Maine, 177, and *Wentworth* v. *Wentworth*, 69 Maine, 247, and especially the language of the opinion in the former case as inconsistent with the construction here put upon the statute. We do not find in either case an expression of an opinion that the word "contract" in the statute includes a business partnership between husband and wife. That point evidently was not in the mind of the court. We make no decision here inconsistent with those decisions or opinions. We do not decide that a wife may not make a valid contract with her husband, nor that she may not join with her husband in contracts with other parties,—nor that she may not become a surety for her husband,—nor that she may not make contracts through him as her agent. All these might be contracts "in her own name."

Both counsel with commendable diligence have made exhaustive citations of cases in other states. Such citations are of less assistance in the interpretation of statutes than in ascertaining general legal principles. Since our legislature does not appear to have adopted any statute of another state which has been construed by the courts of that state, but to have legislated independently,—those decisions should not very much influence us in endeavoring to ascertain the true intent of our own legislature. Apart from any difference in the phraseology of the statutes of the various states,

there may be wide differences in the history, in the general legislative and judicial policy and in the habit of judicial interpretation in the different states, so that the opinions of their courts as to the intent of their legislatures might not indicate the intent of our legislature even when they use similar language. Still it may be instructive to briefly survey some of the cases cited by plaintiff's counsel as antagonistic to our interpretation.

The only case necessarily and expressly affirming the plaintiff's contention is *Suau* v. *Caffe*, 122 N. Y. 308. But that decision was by four justices against three in the second division only of the court of appeals. The narrowness of the majority detracts from the authority of the decision. In the other cases cited there were other elements, not present in this case, which were considered and made to a large degree the basis of the decisions, especially the element of estoppel. These will appear in an examination of the cases. In *Lane* v. *Bishop*, 65 Vt. 575, the wife held herself out as a partner of her husband in running the hotel;—the goods were sold upon her credit;— and she personally promised to pay for them. The court practically held that she was estopped from denying her liability. The court said a wife could not be allowed to conduct a partnership in which her husband was a secret or open partner, to frequently receive all the benefits to be derived therefrom, and escape all liabilities. The case of *Louisville & N. R. R. Co.* v. *Alexander*, 16 Ky. Law Rep. p. 306, is briefly reported, but the wife seems to have been held liable upon the ground that she had held herself out as a partner. The language of the court is: " She cannot say to the world ' I am interested in this business venture with my husband and my property is therefore pledged to the payment of the partnership debts ' and then escape liability." In *Snell* v. *Stone*, (Oregon) 31 Pac. Rep. 663, the wife carried on the business in her own name, but her husband was interested in the business and so informed the plaintiffs upon their inquiry about the time the account was opened. Upon this ground the husband was held liable. The wife made no defense, confessing her liability on her own contract made in her own name. In *Dunifer* v. *Jecko*, 87 Mo. 284, the husband and wife sued as co-owners and co-part-

ners in a newspaper. The defendant raised the point they could not sue as partners, but inasmuch as he had dealt with them as partners, and had been allowed a set-off against them as partners, it was held that he could not now complain as to the joinder,—but even this much was only held by three justices against two. *Dressel* v. *Lonsdale*, 46 Ill. App. 454, was an action by husband and wife for board. The defendant insisted that the action should have been by the wife alone. The court held that it could make no difference to the defendant whether the action was by one or both, since the judgment would in this case be a bar. The court said briefly and obiter that because husband and wife could contract with each other, they could form a business partnership. *Hamilton* v. *Hamilton*, 89 Ill. 350, contains dicta only. In *Skolfield* v. *Jones*, 85 Ga. 816, Jones and wife were part owners of a hotel, and as such gave joint promissory notes. The wife pledged some of her separate property as collateral security for these notes. It was held that her pledge was binding on her. In *Schlapback* v. *Long*, 90 Ala. 525, the action was on a judgment against husband and wife as partners in a hotel business. The husband had held himself out to the creditor as a partner. *Held*, that by reason of such holding out, and because of the judgment recovered against him as such partner, he was now estopped from denying the partnership. In *Wells* v. *Caywood*, 3 Colo. 487, the action was ejectment and the question was simply whether a husband could convey to his wife. The court adopted the liberal expansive rule of construction.

On the other hand the following cases are cited. *Lord* v. *Parker*, 3 Allen, 127; *Artman* v. *Ferguson*, 73 Mich. 146; *Vail* v. *Winterstern*, 94 Mich. 231; *Haas* v. *Shaw*, 91 Ind. 384; *Payne* v. *Thompson*, 44 Ohio St. 192; *Fuller* v. *McHenry*, (Wis.) 18 L. R. A. 512; *Gilkerson–Sloss Co.* v. *Salinger*, 56 Ark. 294, (16 L. R. A. 526); *Mayer* v. *Soyster*, 30 Md. 402; *Howard* v. *Stephens*, 52 Miss. 244; *Miller* v. *Marx*, 65 Texas, 132; *Salinas* v. *Turner*, 33 S. C. 231; *American Mortg. Co.* v. *Owens*, 72 Fed. Rep. 219. The plaintiff insists that these cases are not in conflict with his proposition, since in all the statutes interpreted was restrictive lan-

guage indicating an intention to limit the power of contract by a wife to her separate property, or to her separate business affairs.

He assumes that there is no such restrictive language in our statute. As already intimated, we do not think this assumption is well founded. There is one restrictive clause at least. A married woman's contract to be binding must be "in her own name." Is not this a concise mode of saying that her contract must concern her own separate property, her own separate business? It could hardly mean the mere outward form or name of the contract. It must have referred to its character, its substance. We do not see such a dissimilarity between the substance of the statutes as the plaintiff claims there is.

There is one late case, however, which goes to the extreme against the plaintiff's proposition. *Seattle, etc.*, v. *Hayden*, 4 Wash. 263 (16 L. R. A. 530). The statute was as follows: "Sec. 2406. Contracts may be made by a wife and liabilities incurred, and the same be enforced by or against her to the same extent and in the same manner as if she were unmarried." The term "contract" in this statute is certainly unrestricted by anything in the context. The action was against Mrs. Hayden to charge her as a partner in her husband's firm of J. P. Hayden & Co. The court in an elaborate opinion held that the partnership relation between husband and wife was not within the spirit of the statute. Only one justice out of five dissented. The plaintiff suggests that the "community" law of the state influenced the decision, but the opinion seems to arrive at its result in spite of, rather than on account of, the "community" law.

*Motion and exceptions sustained.*