PROVO STY, J.
The de cujus, Mrs. Widow Macheca, died leaving eight children, issue of her marriage, and leaving an estate and a will. The principal asset of the estate consists of 999% shares of the capital stock of the Macheca Realty & Investment Company. The main question in the case is as to the value of these shares of stock. The question arises on a rule taken by the executors of the estate upon the inheritance tax collector to show cause why the said children and heirs should not be decreed not to owe an inheritance tax.
By the value of these shares of stock is meant the amount which they might be sold for at private sale for cash. But as none of the stock of said corporation has ever been sold — all of it having always been held by the Macheca family — the question of how this value is to be determined is an. open one.
Plaintiffs in rule would adopt the revenue-earning capacity as the sole criterion and would determine this earning capacity by the average earnings since the organization of the company. The capitalization is $400,000. On this the net earnings have been:
2.18% per cent, in 1912;
2.41% per cent, in 1913;
3.55 per cent, in 1914;
2.54 per cent, in 1915;
4.45 per cent, in 1916;
4.15% per cent, in 1917.
It will be noted that the revenue of the last two years has exceeded 4 per cent. On safely invested capital this would not appear to be such a return as should depreciate the investment; and no contention could be made, we imagine, that this stock at face value is not a safe investment.
We may note, in passing, that the inheritance devolved on the said heirs in .1919; that the case was tried in September of that year; that this proof of net earnings was made by plaintiffs in rule in support of their case; and that no explanation is offered why the figures are not given for the year 1918; so that the inference would be that the proof of .them would have been disadvantageous to plaintiffs in rule.
The argument, that the value of stock is to be determined solely from the earning capacity, would, if carried to its logical conclusion, lead to the proposition that, where stock has not yet earned any revenue, its value is not ascertainable at all.
. While the earning capacity of stock has necessarily a very considerable influence upon its market value (meaning by market value what it may readily be sold for at private sale for cash), it is but one of the elements, and not the most important.; for, in the nature of things, shares of t stock represent that much value put into the corporation by the original holder of them, and maintain the same value so long as the assets of the corporation have not depreciated. This presumable original *371 value of corporate stock is emphasized in this state by that provision of our Constitution which forbids the issuance of stock except for actual value. On this fact of corporate stock representing the assets of the corporation is founded the decision of the Supreme Court of the United States in the recent case of Eisner v. Macomber, 252 U. S. 189, 40 Sup. Ct. 189, 64 L. Ed. 521, where the court held that dividends paid out in stock do not constitute income. “A stock dividend,”-says the court, “really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders.” And Mr. Justice Brandéis, in his dissenting opinion (252 U. S. at page 231, 40 Sup. Ct. 201, 64 L. Ed. 521), says:
“The stockholder’s interest in the property of the corporation differs not fundamentally, but in form only, from the interest of a partner in the property of the firm.”
Presumably, therefore, these shares of stock were originally issued for full value, dollar for dollar, were worth at the time of their issuance their face value, and have maintained this value, unless the property of the corporation has depreciated; their main function being to represent the interest of the holder in this property.
[1] The assets of the corporation consist in an office building, situated on what would be considered, we suppose, the most eligible location for such building in the city of New Orleans. It is not pretended that this building has in the slightest degree lost value. It is admittedly worth the $400,000 at which the corporation is capitalized. We conclude that the stock is worth par.
Learned counsel argue that the shares in question are a minority of the stock, and that minority stock is at a great disadvantage, which naturally detracts from its value. Carried to its logical conclusion, this argument would lead to the proposition that in the subscription to the stock of a corporation the minority subscribers ipso facto lose money, and the majority subscribers ipso facto are enriched in the proportion in which the minority are impoverished.
The argument of léarned counsel, as a whole, would lead to the conclusion that where a corporation has not been making money — in fact, has been running at a loss— its stock is worthless, or worse than worthless, though representing millions of property.
Counsel point to the fact that in the inventory of the succession this stock was appraised at $50’ per share, instead of at its face value of $100, and that the agents of the Internal Revenue Department of the United States government appraised it at $39 per share. As to what data these appraisers went on we are not informed. All we can say is that their appraisements appear to us to have been incorrect.
We have no doubt at all that minority stock may often prove to be of less value than stock held by a controlling interest; nor that the book value of the stock of a corporation may often not truly reflect its market value, especially of the minority shares, if we may use such an expression; but nothing would indicate that such is the case with the stock here in question. In the present case, the corporation owes no debts; its property consists in a large office building, well located in the heart of a growing commercial city; its stock has always been held in one family, among whom, so far as the record shows, no dissension exists.
Plaintiffs in rule had it in their power to test the sale value of this stock by putting some of it on the market, and did not avail themselves of that opportunity. They were, of course, under no legal obligation whatever to do so; but, had they done so, and failed to obtain an offer exceeding $39 or $50, the court would certainly have been largely influenced by the result.
*373 [2] The will contains legacies to the daughters-in-law of the decedent and to Sf. Alphonsus Church. Section 2 of Act 109, p. 173, of 1906 (the Inheritance Tax Law), exempts legacies to direct .ascendants or descendants up to §10,000, and to religious institutions. The legacies to the daughters-in-law are therefore not exempt and that to St. Alphonsus Church is exempt.
The judgment appealed from is therefore set aside, and the case is remanded, to be proceeded with in accordance with the views herein expressed. The plaintiffs in rule to pay all costs.
MONROE, C. J., takes no part.
O’NIELL, J., being of the opinion that the cash value of the shares of stock is the criterion for assessment of taxes, dissents.