**JOHNSON, County Attorney, et al. v. DAVIS et al.**

No. 9596.

Court of Civil Appeals of Texas. Austin.

Nov. 20, 1946.

Rehearing Denied Dec. 11, 1946.

Grover Sellers, Atty. Gen., and W. V. Geppert and Arthur L. Moller, Asst. Atty. Gen., for appellants.

Robert G. Hughes, of San Angelo; for appellees.

McCLENDON, Chief Justice.

This is an inheritance tax case. It presents the sole question whether a divorced former wife properly falls within Class A (Art. 7118, Vernon's Ann.Civ.Stats.) as "wife" in assessing the state inheritance tax upon a devise to her by her divorced husband. The taxing officials assessed the tax under Class E (Art. 7122), the amount of which was paid under protest, deposited in the suspense account of the State Treasury, and suit for the excess over the amount under a Class A assessment was brought by the stated devisee and the other beneficiaries under the will against the appropriate officials as authorized by Art. 7057b, Vernon's Ann.Civ.Stats.

In a trial to the court upon stipulation of facts, the judgment awarded plaintiffs the sought recovery, and the officials have appealed.

The salient facts are these:

John William Wilson (the testator) died in April 1945, and his will, disposing of his entire estate valued at $392,883.41, was probated in Tom Green County. He and Mrs. Nannie B. Davis, the devisee in question, had formerly been married and lived together as husband and wife for many years, when in March 1935 they were divorced. They had three children, the youngest of whom, a son, was 20 years old at the time of the divorce; the other two, a married daughter and son, were then over 21 years old. The divorce decree made a division of all community property interests between the spouses. Mrs. Davis married her present husband, Charles B. Davis, in May 1941; and in December 1941 Wilson married Mrs. Nell Wilson, who is now his widow. Wilson's will gave his entire estate to Mrs. Nannie B. Davis for life, with remainder to their three children. The assessed value of Mrs. Davis's life estate is $152,930.84. The tax thereon, computed under Class E, is $14,726.70. Under Class A it is $2,837.93. The difference, $11,888.-77, is the sum in controversy.

The pertinent portions of Art. 7118, which is headed "Class A. Husband or wife or their descendants or ascendants," read:

"If passing to or for the use of husband or wife, or any direct lineal descendant of husband or wife, or any direct lineal descendant or ascendant of the decedent, or to legally adopted child or children, or any direct lineal descendant of adopted child or children of the decedent, or to the husband of a daughter, or the wife of a son, the tax shall be * * *."

As already stated, in order to be included in Class A, it is essential that Mrs. Davis, the divorced former wife of decedent, may properly be classified as his wife, within the meaning of the above quoted language. We are unable to give this interpretation to that language, even though applying thereto the most liberal rules of construction. Since death completely severs the bonds of matrimony, the relation of husband and wife, as a continuing status, is thereby terminated; so that, technically speaking, a decedent can have no wife. That term, as used in the statute, is necessarily, therefore, synonymous with "surviving wife" or "widow"; to which person alone the term "wife" as used in the statute can, under any tenable theory of construction, be held to apply.

A divorce under Texas law constitutes a complete severance, annulment, and final termination of the marital relation or status. "The divorce a mensa et thoro is unknown to our law. Whether the decree be for impediment rendering void the marriage, or for causes arising subsequent to the celebration, the result is the same— a dissolution of the marriage relation." Judge Speer's Law of Marital Rights in Texas, 3rd Ed., p. 776, § 625. Thereafter neither former spouse is husband or wife of the other. They are thenceforth strangers as completely as they were before the marriage, in so far as concerns the marital relation or status.

It is true, of course, that property rights, which accrued during and by virtue of the marital relation, are preserved to the respective spouses, even though not adjudicated by the divorce decree. It is likewise true that the duties and obligations, as well as privileges of parenthood with relation to children born of the marriage survive the divorce decree. Consequently the courts in exercising their powers to award custody of such children to either parent (or otherwise in a proper case) so as to best subserve the interests of such children, may require payment to the custodian by the other parent of reasonably appropriate sums for maintenance of such children. To this extent the parent entitled to such payments has an insurable interest in the life of the other parent. Simpson v. Clayton, Tex.Civ.App., 146 S.W.2d 504 (error dis.), a decision in accord with those in other jurisdictions upon the same subject. So also a divorced former wife may have an interest in a policy taken out during the marriage upon the life of the husband to the extent of her share of community funds which were used in the payment of premiums thereon. See Womack v. Womack, 141 Tex. 299, 172 S.W.2d 307. These interests and rights arise out of obligations and property rights which are wholly independent of any continuance of

the marital relation or status. Relations inter sese as husband and wife are completely severed and at an end. "An absolute divorce terminates the marriage relation, and the husband and wife are to each other as entire strangers; their duties inter se which arose out of the marriage relation are terminated. By such divorce the marriage relation is as absolutely destroyed as if dissolved by death, and the decree changes the status of the parties from coverture to that of single persons so far as matrimonial status is concerned." 17 Am.Jur., p. 539, § 710.

The only cases relied upon by appellees are Lewis v. O'Hair, Tex.Civ.App., 130 S.W.2d 379; American G. I. Co. v. Richardson, Tex.Civ.App., 132 S.W.2d 161 (error ref.); and Simpson v. Clayton, which is discussed above.

The holding in the O'Hair case was that the expression "wife of a son" in the above quoted portion of Art. 7118 included the surviving wife of a deceased son. This holding is based upon the two considerations: (1) That "wife" is frequently used in the sense of "surviving wife" or "widow," and in fact is so used in the same (above quoted) sentence of the statute in designating "wife" of the decedent; and (2) that, generally speaking, the promptings of solicitude are at least as cogent toward the widow of a deceased son as towards the wife of a living son. Which latter consideration the legislature must have had in mind in making the classification.

Neither of these considerations exists with reference to the divorced former wife of a decedent. From the date of divorce she is neither wife nor widow; and the word "wife" can no longer be applied to her; nor by any reasonable or appropriate definition or interpretation of language can she be brought within the meaning of "surviving wife" of her divorced former husband upon his subsequent demise. Neither can it be said that the solicitude toward a former divorced wife would ordinarily be as great as toward a wife.

Moreover, the taxing statutes are not based upon any actual solicitude the decedent may have toward any particular object of his bounty. Solicitude as a presumption arising in the generality of cases, may be an important aid in interpreting the language employed to designate a particular classification made in a legislative act. But beyond that it cannot be extended. The language employed must be fairly and reasonably susceptible of including those sought to be included within the classification. The classifications in the taxing statutes are general, and are based upon some stated relation (not always of necessity consanguinal or affinal, but relation nevertheless) or status. "Wife," as used in the statute does mean of necessity "surviving wife"; but it cannot be construed to include one who had formerly been but by divorce had ceased to be wife, regardless of the solicitude, actual or presumed, which may motivate the decedent in making her the beneficiary of his bounty, nor the particular factual basis upon which such solicitude may rest.

We do not regard the Richardson case as presenting any controlling analogy to that at bar. That was a workman's compensation case. There the father of the deceased employee was dead and his stepmother had later remarried and been divorced. The statute involved named among beneficiaries of the liability insurance "parents and stepmother, without regard to the question of dependency." It was held that the purpose of the statute was "to place the stepmother in the same category in every respect as the mother in so far as concerns the benefits of the Act"; and since the relation of mother was not affected by the death of the father, or remarriage or subsequent divorce of the mother, the relation of stepmother was not affected by such circumstances; and this regardless of the effect of such circumstances upon any technical affinal relation between the stepmother and stepson. We have a wholly different situation here, where the relation or status which determines the classification is that of husband and wife, which relation or status had been completely severed and was non-existent at the time of the death of the former.

We agree with appellee that remarriage of either former spouse is immaterial. Nor

do we attach any importance to the existence vel non of children of the former marriage.

We have not attempted any extended examination of decisions of other states upon this or analogous questions. In re Merritt's Estate, 155 App.Div. 228, 140 N.Y.S. 13 presents a close analogy.

The trial court's judgment is reversed and judgment is here rendered for appellants.

Reversed and rendered.