**DEPOSITORS TRUST COMPANY OF AUGUSTA and Jean F. Durgin**

v.

**Ernest H. JOHNSON, State Tax Assessor.**

Supreme Judicial Court of Maine.

Aug. 2, 1966.

Brann & Isaacson, by Irving Isaacson, Lewiston, for plaintiffs.

Jon R. Doyle, Asst. Atty. Gen., Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

RESCRIPT

DUFRESNE, Justice.

On report by the probate court for the County of Androscoggin under R.S.1954, c. 155, § 33, as amended, now 36 M.R.S.A. § 3801. George W. Lane, Jr., late of Auburn, Maine, died testate on April 9, 1963. The plaintiff Trust Company is the

duly qualified executor of Mr. Lane's will and Jean F. Durgin is a legatee and devisee thereunder. The defendant State Tax Assessor, on July 24, 1964, certified as due and payable on account of the property passing under the Lane will to the said Jean F. Durgin an inheritance tax in the amount of $5,270.28. This initial determination resulted from a computation based upon R.S.1954, c. 155, § 3, as amended, now 36 M.R.S.A. § 3462, whereby

"[p]roperty which shall so pass to or for the use of the following persons who shall be designated as Class A, to wit: Husband, wife, lineal ancestor, lineal descendant, adopted child, *stepchild,* adoptive parent, wife or widow of a natural or adopted son or husband or widower of a natural or adopted daughter of a decedent, grandchild who is the natural or adopted child of a natural or adopted child of a decedent, shall be subject to a tax upon the value thereof, in excess of the exemption hereinafter provided; of 2% of such value in excess of said exemption as does not exceed $50,000; of 3% of such value as exceeds said $50,000 and does not exceed $100,000; of 4% of such value as exceeds $100,000 and does not exceed $250,000; and of 6% of such value as exceeds $250,000. The value exempt from taxation to or for the use of a husband or wife shall in each case be $15,000. The value exempt from taxation to or for the use of a father, mother, child, adopted child, *stepchild* or adoptive parent, or grandchild who is the natural or adopted child of a natural or adopted deceased child of a decedent, shall in each case be $10,000. If there is more than one such grandchild, their total exemption shall, per stirpes, be $10,000. The value exempt to or for the use of any other person falling within said Class A, to wit: Grandparent and other lineal ancestors of remoter degrees, wife or widow of a natural or adopted son, or husband or widower of a natural or adopted daughter of a decedent, grandchild who is the natural or adopted child of a natural or adopted living child of a decedent and other lineal descendants of remoter degrees, shall in each case be $500." [Emphasis ours.]

Upon reconsideration, the State Tax Assessor on July 16, 1965, redetermined and recertified the tax to be $25,526.41 instead of $5,270.28 as previously imposed. The instant action seeks an abatement of that part of the tax as exceeds the sum of $5,270.28, under R.S.1954, c. 155, § 33, as amended, now 36 M.R.S.A. § 3801.

The tax increase is grounded on the Assessor's ruling that Jean F. Durgin, whose share under the Lane will is the subject of this inheritance tax, although concededly the testator's stepchild while he was married to her mother, lost that status of stepchild under 36 M.R.S.A. § 3462, upon the death of her mother, Ann J. Fosdick, the former wife of George W. Lane, Jr., the testator, or, if not at that time, then at the time of the remarriage of Mr. Lane to his widow who survives. On the other hand, the plaintiffs maintain that Jean Fosdick Durgin, at the death of George W. Lane, Jr., was his stepchild within the meaning of the inheritance tax statute, 36 M.R.S.A. § 3462, and that neither the death of her mother nor the remarriage of her stepfather dissolved the relationship nor removed her from that statutory classification. If Jean Fosdick Durgin was not the stepchild of George W. Lane, Jr. at his death within the meaning of that term as used in 36 M.R.S.A. § 3462, then the exemption and lower tax rates granted to Class A beneficiaries would not apply, and the Assessor's redetermined inheritance tax computed in accordance with the provisions relating to the tax on Class C beneficiaries would be correct. The pertinent statute in the case of Class C beneficiaries is R.S.1954, c. 155, § 5, as amended, now 36 M.R.S.A. § 3464, which reads as follows:

"Property which shall so pass to or for the use of any person not falling within

either of the classes hereinbefore set forth shall be subject to a tax upon the value thereof, in excess of an exemption of $500; of 12% of such value in excess of said exemption as does not exceed $50,000; of 14% of such value as exceeds $50,000 and does not exceed $100,000; of 16% of such value as exceeds $100,000 and does not exceed $250,000 and of 18% of such value as exceeds $250,000."

█ We need not concern ourselves with the factual situation stipulated by the parties to have existed and persisted to his death between the decedent and his former wife's children. That the 3 Fosdick children were, from his marriage to their mother, looked upon and treated by Mr. Lane as his own children; that he was a father to them, providing their support and their college education; his sponsoring trips for them to Europe; his distribution to them of their mother's estate which he had acquired under her will; his wedding gifts to them of furnished homes; all these considerations may conclusively prove that Mr. Lane was in fact and in deed what a natural or adoptive father should be. However, statutory construction of tax legislation must be based on a more stable basis than proof of a relationship of love and affection between a decedent and the beneficiaries of his bounty, unless the statutory language expressly states otherwise.

█ As stated in Hunter v. Totman, 146 Me. 259 at 265; 80 A.2d 401, we are aware that the legislative intent is the fundamental rule in the construction or interpretation of statutes. Smith v. Chase, 71 Me. 164; Pierce v. City of Bangor, 105 Me. 413, 74 A. 1039; State v. Koliche, 143 Me. 281, 61 A.2d 115.

█ And as further stated in Hunter, supra, in aid to our search for legislative intent, we must have in mind that any statute in derogation of the common law is to be strictly construed and not extended by implication. Henderson v. Berce, 142

Me. 242, 50 A.2d 45, 168 A.L.R. 572; Haggett v. Hurley, 91 Me. 542, 40 A.2d 561, 41 L.R.A. 362.

In Estate of Clark, 131 Me. 105, 159 A. 500, our Court listed the three rules of construction adopted by the authorities in inheritance tax exemptions, (1) the rule of liberal construction "to promote the benevolent purpose of the exemption," (2) the rule of strict interpretation and (3) the rule of "reasonable and liberal interpretation with a view to effectuate the intention of the legislature." It cited the following text from Blackmore and Bancroft on Inheritance Taxes, p. 196: "We believe the true rule is that as the inheritance tax is a special tax, the intention to impose it in any case must be clearly expressed and words of exemption should be liberally construed." It followed the rule of "reasonable interpretation of the obvious intent and spirit of the statute." See also, Thirkell, Ex'r v. Johnson, 150 Me. 131, 136, 107 A.2d 489. Farnsworth v. Iowa State Tax Commission, Iowa, 132 N.W.2d 477.

█ "[W]ords in a statute are to be taken in their common and popular sense, unless the context shows the contrary." State v. Blaisdell, 118 Me. 13 at 15, 105 A. 359, 360; State v. Cumberland Club, 112 Me. 196, 91 A. 911. See, R.S.1954, c. 10, § 22(I), now 1 M.R.S.A. § 72(3).

And this rule applies in the interpretation of revenue acts. Crane v. Commissioner of Internal Revenue, 331 U.S. 1, 6, 67 S.Ct. 1047, 91 L.Ed. 1301; Malat et ux. v. Riddell, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 103, decision March 21, 1966; Ferguson v. Johnson, 159 Me. 4, 187 A.2d 59; 28 Am.Jur. Inheritance, Estate and Gift Taxes, § 49.

We note initially that the statute itself does not bear internal evidence of any intended difference in tax exemption or tax rate benefits between a child, an adoptive child or a stepchild. Equal treatment is the obvious design of the Legislature.

Our Court in Canal Nat. Bank of Portland et al. v. Bailey, 142 Me. 314, 51 A.2d 482 (1947) when construing the term "widower" under the reference statute, did not in any way emasculate the "common meaning" rule, but firmly re-asserted the same.

In common, colloquial and accepted use, the word "stepchild" refers to the child of one's wife by a former husband or of one's husband by a former wife. Inhabitants of Guilford v. Inhabitants of Monson, 134 Me. 261, 265, 185 A. 517. In re Smith's Estate, 49 Wash.2d 229, 299 P.2d 550, 63 A.L.R.2d 299; 40 Words & Phrases, Stepchild, pp. 223, 224; Webster's New International Dictionary (1932); Funk & Wagnalls, New Standard Dictionary, (1936).

■ The sole question for our determination is whether the plaintiff, Jean Fosdick Durgin, lost her preferential status of a Class A beneficiary as the decedent's stepchild under our inheritance tax statute, either when her mother died or when the decedent remarried.

The considerations which would motivate a stepfather to provide for a stepdaughter in his will may be as cogent after the death of the stepdaughter's mother and after the stepfather's remarriage, and the use by the Legislature of the broad designation of stepchild without further limitative restrictions of any kind spells out a legislative object the breadth of which ought not to be cramped by a narrow judicial construction, especially where the legislative purpose may be reached without doing violence to any part of the statutory language. It would have been so easy for our Legislators, if such had been their intention, to make special exclusionary provisions for stepchildren of step-parents whose marriage to the natural parent was dissolved by death, whether remarried or not, that the absence thereof militates against accordant judicial strictures by implication. We further note that the Legislature treated the wife or husband of a decedent's child in the same way, whether the decedent's child was living or not, so that there is no patent legislative policy on inheritance taxation favoring any doctrine to the effect that the death of decedent's child dissolved the previous affinal relationship existing between the decedent and his son-in-law or daughter-in-law.

The tie of affinity between step-parent and stepchild survives the death of the natural parent whose marriage had given rise to it, so that the stepchild will be taxed, in accordance with the provisions of the statute, as a stepchild within the Class A beneficiaries, and not as a stranger within the Class C beneficiaries. In re Bordeaux' Estate, 37 Wash.2d 561, 225 P.2d 433, 26 A.R.L.2d 249.

As stated in *Bordeaux' Estate,* supra, 225 P.2d 433, at page 451:

"The rights of stepchildren have been but slowly established through the years, and always in direct opposition to the common law, 'whose fundamental pronouncement is that the mere relationship of step-parent and stepchild confers no rights and imposes no duties.' 4 Vernier, American Family Laws, 485, § 268. But the modern tendency has been, and rightly so, to assimilate the stepchild to the natural child. See Note, 52 Harv.L.Rev. 515. Where the legislature has passed a statute which, on its face, appears designed to aid in accomplishing that end, we should not restrict it by resort to abstruse and little-known common-law rules, particularly when such rules, as in this case, are of the most doubtful validity."

Since the rule contemplates the survival of the step-parent-stepchild relationship beyond the death of the natural parent, the remarriage of the step-parent would not appear to have any compelling significance for inheritance tax purposes requiring the adoption of a different rule.

The contrary view is championed by Brotherhood of Locomotive Firemen and

Enginemen v. Hogan, (D.C.Minn.1934), 5 F.Supp. 598. See also, Zimmerer v. Prudential Ins. Co. of America, 150 Neb. 351, 34 N.W.2d 750.

Our Court in Spear v. Robinson, 29 Me. 531, (1849), without citation of authorities and without analysis in depth, but within the issues raised in the case, adopted the rule of survivorship of affinal relationship upon dissolution of the marriage that created the same. It used the following positive and unconditional language:

"By the marriage, one party thereto holds by affinity the same relation to the kindred of the other, that the latter holds by consanguinity. And no rule is known to us, under which the relation by affinity is lost on a dissolution of the marriage, more than that by blood is lost by the death of those, through whom it is derived; the dissolution of a marriage, once lawful, by death or divorce, has no effect upon the issue; and it is apprehended, it can have no greater operation to annul the relation by affinity, which it produced."

In Simcoke v. Grand Lodge A.O.U.W., 84 Iowa, 383, 51 N.W. 8, 15 L.R.A. 114, (1892), the Iowa court quoted the above excerpt from the Spear case, supra, and applied the same rule in the construction of a statute which required that the beneficiary under the benefit policy of a fraternal organization be [amongst other enumerated persons] the "relative" of the insured member. The stepson of the insured member was held to be within the statutory term "relative", notwithstanding that his mother had died, the court saying that the relationship continued after the death of the wife, on whom the relationship depended.

Again, the Spear case quotation received approval in the case of In re McGraff's Estate, 83 N.E.2d 427 (Ohio App.), (1948) where the statute provided for descent of property to stepchildren when a person died intestate leaving no next of kin, and it was held that stepchildren of a testator who was divorced from the stepchildren's mother were persons entitled to inherit from the testator under the terms of the descent statute.

In Steele v. Suwalski et al., 75 F.2d 885, 99 A.L.R. 588 (1935), Spear, supra, was stated to be the leading case to the effect that relationships by affinity (sister-in-law) are not terminated by the dissolution of the marriage which created them, either by divorce or death of one of the parties. The court therein ruled that the plaintiff daughter-in-law could recover as beneficiary of a war risk insurance policy, even though her husband, the decedent's brother had predeceased the insured.

Other courts citing Spear, supra, with approval, are: Renner et al. v. Supreme Lodge of Bohemian Slavonian Ben. Soc. etc., 89 Wis. 401, 62 N.W. 80 (1895); Georgia Power Co. v. Moody, 186 Ga. 343, 197 S.E. 844, 117 A.L.R. 798 (1938).

In Farnsworth v. Iowa State Tax Commission, Iowa, 132 N.W.2d 477 (1965), the Iowa court had to construe its inheritance tax statute and determine whether the 5% lower tax rate section of the statute applied instead of the section providing for the higher rate of 10%. The lower rate would be in play if the plaintiff was a daughter-in-law of the decedent joint tenant within the meaning of that term as used in the statute. The plaintiff's former marriage to the decedent's son had terminated by death and she had remarried. The issue was whether the plaintiff was still a daughter-in-law of her former husband's mother, or had her status as such been ended, either by the death of her husband or by her remarriage. The issue is the same in the instant case except that herein we are dealing with the relationship of stepchild and step-parent. The Iowa court having followed the lead of Spear v. Robinson in Simcoke v. Grand Lodge A.O.U.W., supra, held in Farnsworth that the law of Simcoke and Spear still represented the law in Iowa.

For a thorough analysis and discussion of the authorities, one may consult In re

Bordeaux' Estate, supra, and Steele v. Suwalski et al., supra, where the bulk of the authorities are listed. See also, annotations in 26 A.L.R.2d pp. 271–277; 28 Am. Jur. Inheritance, Estate and Gift Taxes, §§ 308, 309; 85 C.J.S. Taxation § 1181c (61).

There is no need for us to enter into a full and exhaustive re-appraisal of the rule relating to the duration of relations by affinity and of the present status of Spear v. Robinson, except to remark that it has never been overruled by this Court.

■ When the Legislature added the class of stepchildren as beneficiaries under Class A in the inheritance tax statute in 1945, P.L. c. 358, Spear v. Robinson had been the law in Maine for nearly a century, and it must be presumed that our Legislators were knowledgeable of its paramount position throughout the country as sponsoring the doctrine of the duration of the affinal relationship beyond the dissolution by death or divorce of the marriage that created it. The use of the term stepchild under those circumstances without any restrictive limitation and in the light of the broad rule enunciated in Spear, indicates without doubt a legislative purpose to adopt the term in its ordinary, common and every-day meaning, in recognition of the fact that ties of affinity are often stronger than those between collateral, or even lineal, kinsmen by blood. The relationship of stepchild and step-parent, once created, is not generally regarded as terminated by the death of one of the parties to the marriage or by a divorce, nor by the remarriage of the step-parent. The stepchild in 1945 so far as preferential inheritance tax treatment is concerned was placed in the same class and on the same level as the natural or adopted child, and should enjoy equal benefits under the law without any implied reservation based on common-law strictures of ancient times.

There is no reason to believe that the Legislature sought to narrow the meaning of "stepchild" or depart from its usual and popular meaning. It could have limited its broad connotative sweep by simple little strokes of the pen.

It is hereby adjudged that such part of the tax as exceeds the original determination and assessment in the amount of $5,270.28 was wrongly determined and assessed without authority of law and the same must be abated.

So ordered without costs.