CARMINE R. LAVIERI, EXECUTOR (ESTATE OF ANITA F. HOLT), ET AL. *v.* COMMISSIONER OF REVENUE SERVICES

BOGDANSKI, C. J., HEALEY, PARSKEY, ARMENTANO and WRIGHT, Js.

Argued April 9—decision released June 9, 1981

*David M. Cusick*, with whom was *Carmine R. Lavieri*, for the plaintiff.

*Albert E. Sheary*, chief tax attorney, with whom, on the brief, were *Carl R. Ajello*, attorney general, *Seymour M. Alpert*, assistant commissioner of revenue services, and *Richard D. Nicholson*, inheritance tax attorney, for the defendant.

BOGDANSKI, C. J. The parties to this action have stipulated to the following facts: On June 22, 1940, when Janice A. Holt was ten years old, her father, Henry A. Holt, married Anita F. Holt. The marriage made Janice A. Holt a stepchild of Anita F. Holt. The marriage between Henry A. Holt and Anita F. Holt was terminated by divorce on February 23, 1960. In 1966, Henry A. Holt died. Anita F. Holt died on September 23, 1976, a resident of the town of Hartland, leaving a will naming Carmine Lavieri as executor. Section 12-344 of the General Statutes provides that the net taxable estate passing to any stepchild of a decedent shall be taxed at class B rates. The commissioner of revenue services computed the succession tax due on Anita F. Holt's estate on the basis that Janice A. Holt was a class C beneficiary. On May 7, 1979, the Probate Court for the district of Hartland decreed that the commissioner of revenue services collect the net taxable amount under class C of § 12-344. From that order and decree the executor and Janice A. Holt appealed to the Superior Court.

On September 5, 1980, the trial court, *O'Donnell, J.*, at the request of and with the consent of all the

parties, reserved the following questions by the parties for the consideration and advice of this court. See Practice Book §§ 3133 and 3134. (a) Did the termination of the marriage between Henry A. Holt and Anita F. Holt by virtue of their divorce prior to the death of Anita F. Holt terminate the relationship of parent and stepchild that had existed between Anita F. Holt and Janice A. Holt for the purpose of determining whether the net taxable estate passing to Janice A. Holt should be taxed at the class B rate or the class C rate as set forth in § 12-344 of the General Statutes? (b) Did the death of Henry A. Holt prior to the death of Anita F. Holt terminate the relationship of parent and stepchild that had existed between Anita F. Holt and Janice A. Holt for the purpose of determining whether the net taxable estate passing to Janice A. Holt should be taxed at the class B rate or the class C rate pursuant to § 12-344 of the General Statutes? These are issues of first impression in this state.

The Connecticut succession tax is a tax on the right to receive property from a decedent. *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 238, 377 A.2d 305 (1977). To determine the amount of that tax, the commissioner of revenue services must ascertain the relationship of the decedent to the beneficiary. Since the rate of taxation is different for different classes, the placement in one class as opposed to another can significantly affect the amount of the tax.[1] The statute does not define "stepchild."

---

[1] The four classes established pursuant to § 12-344 of the General Statutes are: "Class AA, the net taxable estate of any transferor passing to any husband or wife . . . . Class A, the net taxable estate of any transferor passing to any parent, grandparent, adoptive parent and any natural or adopted descendant . . . . Class B, the

The stepparent-stepchild relationship is one based on affinity. Affinity is "the connection existing in consequence of marriage between each of the married persons and the kindred of the other." *In re Bordeaux's Estate*, 37 Wash. 2d 561, 565, 225 P.2d 433 (1950) ; annot., 26 A.L.R.2d 271. The plaintiff contends that the "step" relationship continues for the purpose of the succession tax, after the termination of the marriage which created it, while the defendant contends otherwise. The cases indicate that the term "stepchild" is interpreted according to the different contexts in which it is used.

An ambiguity in the succession tax is to be resolved in favor of the taxpayer. *Sullivan* v. *Union & New Haven Trust Co.*, 147 Conn. 178, 181, 158 A.2d 174 (1960) ; *Security Mills, Inc.* v. *Norwich*, 145 Conn. 375, 377, 143 A.2d 451 (1958) ; *Connelly* v. *Waterbury National Bank,* 136 Conn. 503, 510, 72 A.2d 645 (1950).

Connecticut law appears to support the view of the plaintiff. In *Sullivan* v. *Union & New Haven Trust Co.,* supra, the succession tax statute in force when the decedent died included the "wife of any child" of the decedent in class B. That case held that the relationship of "wife of a child" survived the termination of the marriage which created it. We observed that it would be unreasonable to hold that property passing to the wife of a son would be taxed in class B if her husband died the day after

net taxable estate of any transferor passing to the husband or wife or widower or widow who has not remarried of any natural or adopted child of such transferor, to any stepchild, brother or sister of the full or half blood or adopted brother or sister and to any natural or adopted descendant of such brother or sister . . . . Class C, the net taxable estate of any transferor passing to any person, corporation or association, not included in either Class AA, Class A or Class B. . . ."

his parent, but that it would be taxed in class C if the husband died minutes, hours or days before the parent. The same rationale would appear to apply to the present case.

In other contexts the "step" relationship may or may not continue after the termination of the marriage which created it. In the case of *Wilson* v. *State of Connecticut,* 6 Law Rptr. 452 (Conn. 1843) the defendant was charged with committing the crime of incest by cohabitation with his step-daughter after her natural mother had died. The court held that the affinity between the defendant and the stepdaughter was dissolved by the death of her mother. We note, however, that this involved a criminal statute which must be strictly construed in favor of the defendant. *State* v. *Perkins,* 169 Conn. 263, 266, 363 A.2d 141 (1975). On the other hand, an early Connecticut case held that, although a party had married the judge's aunt, that judge was not disqualified because his affinal relationship to the party to the proceeding had terminated upon the death of the common relative. *Winchester* v. *Hinsdale,* 12 Conn. 88 (1837).

Thus, the context in which the "step" relationship is involved is crucial. See *In re Bordeaux's Estate,* supra, for a scholarly discussion of the common-law treatment of affinity. It is not necessary for us to decide whether affinal relationships continue after death or divorce in other contexts. We limit our holding to questions involving the succession tax and stepchildren.

The weight of authority in other jurisdictions supports the view that, in the inheritance tax context, the "step" relationship continues after the termination of the marriage which created it. This is

true whether the marriage terminates by death; see *Farnsworth* v. *Iowa State Tax Commission*, 257 Iowa 280, 132 N.W.2d 477 (1965); *Depositors Trust Co. of Augusta* v. *Johnson*, 222 A.2d 49 (Me. 1966); *Dennis* v. *Commissioner of Corporations & Taxation*, 340 Mass. 629, 165 N.E.2d 893 (1960) (affinity continues between testatrix and surviving husband of the testatrix' daughter); *Decker* v. *Williams*, 215 S.W.2d 679 (Tex. Civ. App. 1948); or by divorce. *In re Ehler's Estate*, 53 Wash. 2d 679, 335 P.2d 823 (1959); *In re Estate of Iacino*, 189 Colo. 513, 542 P.2d 840 (1975). These holdings have been based upon the following considerations, "[t]he rights of stepchildren have been but slowly established through the years, and always in direct opposition to the common law, 'whose fundamental pronouncement is that the mere relationship of stepparent and stepchild confers no rights and imposes no duties.' 4 Vernier, American Family Laws, 485 § 268. But the modern tendency has been, and rightly so, to assimilate the stepchild to the natural child. See Note, 52 Harv. L. Rev. 515 [1939]. Where the legislature has passed a statute which, on its face, appears designed to aid in accomplishing that end, we should not restrict it by resort to abstruse and little-known common-law rules, particularly when such rules, as in this case, are of the most doubtful validity." *In re Bordeaux's Estate*, supra, 594. See Berkowitz, "Legal Incidents of Today's 'Step' Relationship: Cinderella Revisited," 4 Fam. L. Q. 209 (1970).

The courts in *In re Ehler's Estate*, supra, and *In re Estate of Iacino*, supra, stated that the distinction between death and divorce in terms of inheritance tax classifications was a distinction without any compelling legal significance. We agree. The

defendant cites only one case where a court held that for inheritance tax purposes, affinal relationships survive the death of a parent but not the divorce of the parents' marriage. In *Hamilton* v. *Calvert*, 235 S.W.2d 453 (Tex. Civ. App. 1951), the statute spoke of a "direct lineal descendant," not of "stepchildren," as does our statute. The opinion in *Hamilton* v. *Calvert* gave no persuasive reasoning for making a distinction between death and divorce. Even if it should stand for the proposition that divorce terminates the stepchild relation, we decline to follow that case. Concededly, termination of a marriage by death as opposed to divorce certainly results in differing consequences for the parties to the marriage. A voluntary dissolution usually signifies that the emotional commitment which had bound the parties to the marriage has eroded. This does not necessarily imply, however, that the step relationship had also withered. The dissolution proceeding does not deal with the relationship between stepparent and stepchild nor does the decree purport to sever it.

Accordingly, we answer "no" to question "a" and "no" to question "b."

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.