519 So.2d 373 (1988)
SUCCESSION OF Lela Windsor GARNETT, Plaintiff-Appellant,
v.
STATE of Louisiana, DEPARTMENT OF REVENUE AND TAXATION, Defendant-Appellee.
No. 19302-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1988.
Writ Denied March 18, 1988.
*374 Hayes, Harkey, Smith, Cascio & Mullens by Haynes L. Harkey, Jr., Monroe, for plaintiff-appellant.
Suzanne K. Sasser, Baker, for defendant-appellee.
Before HALL, MARVIN and SEXTON, JJ.
MARVIN, Judge.
Interpreting the Louisiana inheritance tax laws (LRS Title 47) in this appeal by the succession executrix, we determine whether one of the decedent's legatees, the mother of decedent's grandchildren and her former daughter-in-law, continued to be a direct descendant by affinity of decedent after she was divorced from decedent's son more than 20 years before decedent's death.[1]
Decedent died in December 1985, having executed a will in October 1983 that left ¼ of her estate to her son, David Garnett, and ¾ to David's former wife, Bettye Normand Garnett. David and Bettye were married in December 1953 and divorced in April 1964. The two children of the marriage, a daughter born in 1956 and a son born in 1958, who were placed in the legal custody of their mother after the divorce, also survive the decedent.
The trial court, "persuaded ... by the reasoning of the courts in Texas," held "that the relationships of affinity created by marriage do not survive the dissolution of that marriage by divorce." We are not so persuaded.
We hold that the legatee, who is the mother of decedent's grandchildren, is entitled to the more favorable inheritance tax classification of a direct descendant by affinity of the decedent, notwithstanding that the contract of marriage between that mother and decedent's son was terminated by divorce before the will was executed.
We reverse and render judgment in favor of the legatee-mother and against the State.

THE LOUISIANA AUTHORITIES
The language we are interpreting is now contained in LRS 47:2402 and 2403, the source of which was Act 127, Ex.Sess. of 1921, which was incorporated into the Louisiana Revised Statutes of 1950.
The prior Louisiana inheritance tax law, Act 109 of 1906, taxed legacies and inheritances left either to strangers or collaterals at five percent and the value of legacies and inheritances above $10,000 left to direct descendants or ascendants at two percent. See Succession of Baker, 129 La. 74, 55 So. 714 (1911). The 1906 law did not mention relatives by affinity or surviving spouses and it was soon held that legacies *375 left to daughters-in-law would be taxed as if they were strangers and not as if they were direct descendants. Succession of Coleman, 147 La. 368, 85 So. 43 (1920).
The 1921 act of the Legislature continued the graduated rates of tax on legacies and inheritances left to persons within the three categories, but added exemptions for collateral relations and for strangers. That Act also provided that descendants by affinity and brothers and sisters by affinity could also claim the lower tax rate and exemption in their respective degree that was provided for consanguineous relatives of the same degree. The surviving spouse was granted the same favorable treatment as a direct descendant. Compare Section One of that Act and LRS 47:2402.[2] Compare Section Two of that Act and LRS 47:2403.[3]
Although the law has been amended since 1921, the Legislature has not changed or defined the term direct descendant by blood or affinity or the term brothers and sisters by affinity in the inheritance tax law.
The Revised Statutes direct in part that Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. LRS 1:3. Compare La. C.C. Arts. 9-13, Act 124 of 1987.
The 1921 Act only prospectively superseded the 1906 Act. The 1921 Act, § 25, stated:
The provisions of this act shall apply to all successions opened by death subsequent to the date the act shall become effective; and successions opened prior thereto shall be subject to taxation under the laws in force at the time they were opened ...
LRS 47:2402, 2403, and the 1921 source statute apply the benefit of the favorable inheritance tax classification to affinal descendants and to affinal brothers and sisters only in the case of a testate decedent who died after and not before the effective date of the 1921 Act. The statutes do not mention ascendants by affinity. It is perhaps superfluous to note that an affinal relative of a decedent does not inherit under the laws of intestacy.
The 1921 Act, continued in the Revised Statutes by LRS 1:16 and thereafter amended, purposefully changed the prior law to direct that the consanguineous and the specified affinal legatees of the same degree be subjected to the same exemption and the same graduated rate of tax. In these respects, §§ 2402 and 2403 are not ambiguous and do not require interpretation.
The trial court's judgment taxes the legacy in question as if Bettye Garnett was a "stranger" to the decedent. Strangers, who are not among the terms descendants by affinity or brothers or sisters by affinity in the statute, are granted the lesser exemption and are taxed at the highest rate.
*376 The term strangers, as used in §§ 2402 and 2403, is not a technical term or a term of art which in other circumstances might be defined as an unknown person, a third person, a stranger-in-law or to-the-deed or to-the-blood. The term is used in the inheritance tax statutes merely as a complement and in contradistinction to the other two categories of persons on whom the inheritance tax is levied, that is descendants by blood or affinity, ascendants, and surviving spouse, and the collateral relations, including brothers and sisters by affinity. The term strangers has been interpreted to mean "all other persons" not within the other categories of persons who are responsible for the tax. This interpretation is in accord with the mandate of LRS 1:3 that phrases of a statute be interpreted according to their context and to avoid conclusions which the legislature did not contemplate. See Succession of Baker, supra, at 55 So. 716-717.
In Baker, the 1906 inheritance tax law was interpreted to require the widow to pay tax on a legacy from her husband as if she were a stranger. The widow was held not to be a direct descendant or ascendant or a collateral relation of her husband. The 1921 Act included the surviving spouse of a decedent in the category with a direct descendant and included direct descendants by affinity in the most favorable tax classification.
Affinity has been described in the civil law as that relationship which exists between one of the parties joined by marriage, and the relations of the other. Poydras v. Livingston, 5 Mart. (O.S.) 292, 296 (La.1817), citing Pothier. The question there was whether the relationship, if any, between a defendant and a judge required recusal of the judge under a statute providing for trial courts.
Planiol explains that a person, who, by marriage, becomes one with his spouse and thereby joins a family, is colloquially called a relative "by alliance." Planiol says that that person should correctly be called a member "of the family by alliance," because two families do not become allied. 1 M. Planiol, Treatise on the Civil Law, No. 652, p. 391-392 (12th ed., La. State Law Inst. trans. 1959). He asserts that the relationship by alliance springs from marriage (No. 653, p. 392), but cautions that the rule "should not be taken as ... absolute" that the relationship ceases "with the marriage which created it." In short, Planiol concludes:
There is a saying: "My daughter is dead, hence, my son-in-law is dead." But this should not be taken as an absolute rule; it is only true as far as certain effects of the relationship by marriage are concerned.... The relationship itself is not gone ... [especially] as long as there are living children born of the marriage. No. 657, p. 393-394.

THE COMMON LAW AUTHORITIES
The common law courts of this nation have also wrestled with the duration of the affinal relationship in varied situations. The affinal relationship may continue after the marriage from which it springs is terminated by divorce or death. The results of each case depend on the purpose for which the duration of the affinal relationship is to be determined (criminal incest, qualifications of juror or judge, insurable interest, inheritance tax classification, etc.) and in the light of the language of the statute which is being interpreted. See In re Bordeaux's Estate, 37 Wash.2d 561, 225 P.2d 433 (1950), Annotated at 26 A.L.R.2d 271 (1952).
Relying on American common law authorities, Bordeaux followed, without citing, the Planiol analysis and rationale to refute the proposition that the affinal relationship is broken in all cases when the marriage is dissolved by death or by divorce. Bordeaux held that the proposition should not extend to control the interpretation and application of the Washington inheritance tax law which granted a more favorable inheritance tax classification to a legacy left by a stepmother to a "stepchild" whose natural father had died before the stepmother.
The weight of the cases in the common law states supports the proposition that the affinal relationship is not broken in all *377 cases when the marriage is dissolved, either by death or divorce. See 26 A.L.R.2d 271 as supplemented. See 2A C.J.S. Affinity (1972)[4]. The Texas cases which persuaded the trial court have been noted as being contrary to the weight of authority. Lavieri v. Commissioner of Revenue Services, 184 Conn. 380, 439 A.2d 1012, 1015 (1981). Interpreting there the word stepchild in the Connecticut inheritance tax law, the court reviewed the case law and concluded:
The weight of authority in other jurisdictions supports the view that, in the inheritance tax context, the "step" [or affinal] relationship continues after the termination of the marriage which created it... [whether] by death ... or by divorce.... The courts in [Washington] and [Colorado] stated that the distinction between death and divorce in terms of inheritance tax classifications was a distinction without any compelling legal significance. We agree. The defendant cites only one case where a court held that for inheritance tax purposes, affinal relationships survive the death of a parent but not the divorce of the parents' marriage.... Hamilton v. Calvert, 235 S.W.2d 453 (Tex.Civ.App.1951) ... The opinion in Hamilton v. Calvert gave no persuasive reasoning for making a distinction between death and divorce.... A voluntary dissolution usually signifies that the emotional commitment which had bound the parties to the marriage has eroded. This does not necessarily imply, however, that the step relationship has also withered. The dissolution proceeding does not deal with the relationship between stepparent and stepchild nor does the [divorce] decree purport to sever it. 439 A.2d at 1015. Citations omitted. Brackets and emphasis supplied.
In Hamilton, cited above, the Texas court was construing the term direct lineal descendant of [decedent's] wife in the Texas inheritance tax law and not the word stepchild or the term descendant by affinity of the decedent. Compare Estate of Edgett, discussed infra.
In Johnson v. Davis, 198 S.W.2d 129 (Tex.Civ.App.1946), the other Texas case which persuaded the trial court, the court was construing the word wife in the Texas inheritance tax law. Johnson held that the decedent's first wife and mother of his children, from whom he had obtained a divorce and had married another who survived him, was not the "wife" of decedent as that term is employed in the Texas statutes. The court recognized that some cases had construed the term wife to mean "surviving wife," but held that the term could not be construed to mean a former wife who had been divorced from decedent. 198 S.W.2d at 131. Compare Succession of Baker, cited and discussed supra, wherein the surviving wife under the 1906 Louisiana law was classified and taxed as a stranger.
Conversely and under the Texas inheritance tax law, the widow of decedents' son was held to be the "wife of a son" and entitled to a more favorable tax classification even though the son had predeceased his parents. Lewis v. O'Hair, 130 S.W.2d 379 (Tex.Civ.App.1939). The State also refers us to Estate of Edgett, 111 Cal.App.3d 230, 168 Cal.Rptr. 686 (1980), wherein the divorced wife of the decedent, who resumed concubinage with decedent before his death, was denied classification as a "wife" under that state's inheritance tax law. Compare Johnson, supra. Compare L.R.S. 47:2402, 2403 which grant favorable tax treatment to the surviving spouse and do not mention a divorced spouse.

CONCLUSION
The State, stating in its brief that it does not doubt "that `affinity' in the layman's sense, was borne by the testator for Bettye," nonetheless contends that the marriage must exist at the time of the *378 decedent's death in order for Bettye to be entitled to the favorable inheritance tax classification.
The term descendant by affinity, like the term stranger, is not susceptible of a precise or absolute definition universally applicable in every situation. See Planiol and the common law authorities discussed above. The term is not a technical term or a term of art. Because of the term's ambiguity, LRS 1:3 effectively directs us to construe the term in the context and purpose of the statute and in accord with the common and approved usage [layman's sense] of the language.
In Louisiana, marriage is a civil contract that endures until the death of one of the contracting parties unless it is sooner terminated for causes determined by law. La. C.C. Arts. 86, 89. See also C.C. Art. 136. The effects of a divorce ... shall also dissolve forever the bonds of matrimony, between the parties, and place them in the same situation with respect to each other as if no marriage had ever been contracted between them. C.C. Art. 159, in part. Our emphasis.
Neither the civil code nor the revised statutes provide for the duration of the affinal relationship created by a marriage. The civil code provides for the duration of the marriage and its effects when terminated by divorce. C.C. Art. 159 implies that the effects of the divorce do not terminate all relationships created by the marriage. We reject the proposition, accepted below, that a divorce terminates all affinal descendant relationships which arose from the marriage.
The Texas cases, which persuaded the trial court to the contrary, pronounce results that are similar to results in Louisiana cases interpreting the Louisiana inheritance tax law from 1906 to 1921. The law in that era did not contain the term by affinity. If the Texas cases in any way support the result below, they should not and do not control the interpretation of LRS 47:2402-2403.
The burden of proving facts establishing exemptions from the tax imposed... is upon the person claiming the exemption. LRS 47:2406, in part. Any plausible doubt against the person claiming the exemption is fatal. Succession of Hyams, 199 So.2d 29, 33 (La.App. 4th Cir.), writ denied, 250 La. 984, 200 So.2d 667 (1967). Hyams, strictly construing the statute, held that a profit-sharing and retirement trust for private employees that was named as a legatee in a will was not a charitable institution within the meaning of § 2402(4), which exempts all legacies to such institutions. Revenue statutes imposing a tax on property generally are to be construed strictly against the taxing authority. Collector of Rev. v. Wells Fargo Leasing, 393 So.2d 1244 (La.1981). The Louisiana inheritance tax law is not a tax on property, however, but is on the privilege or right of transmitting, by will or by intestacy, the property of a decedent to others. Succession of Henderson, 211 La. 707, 30 So.2d 809 (1947). Strict construction does not require a biased construction in favor of one party or the other, but a fair construction in the light of the cause which induced the Legislature to enact the statute under interpretation. See former La.C. C. Art. 18; La.C.C. Art. 10, Act 124 of 1987. That cause, or purpose, was to provide a more favorable inheritance tax base and rate to step and in-law descendants than to strangers.
Here there are no facts in dispute. The State does not contest the fact of the 1953 marriage and subsequent issue of David and Bettye, but only the legal effect of the 1964 divorce on the 1983 testament of the testatrix. A fair construction of the statutory term descendant by affinity leads us to reverse the trial court and render judgment for the appellant.
In the context of the law in §§ 2402-2403, the comparison of the 1921 source statute with the prior law between 1906 and 1921, and in the common and accepted comparative usage of the terms descendants by affinity and strangers, we must construe the term descendants by affinity to include the divorced wife of decedent's son and mother of decedent's grandchildren. It is reasonable and logical to conclude that the Legislature envisioned that *379 some in-law parents may have a closer relationship with some descendants by affinity than they have with some blood descendants.

DECREE
The judgment of the trial court is reversed and judgment is hereby rendered decreeing that Bettye Normand Garnett is a descendant by affinity of the decedent, Lela Windsor Garnett, and is entitled to be classified as such for the purpose of the Louisiana inheritance tax law, LRS 47:2402-2403. All costs, here and below and to the extent allowed by law, are assessed against appellee.
REVERSED AND RENDERED.
NOTES
[1] If, after the 1964 divorce, Bettye is classified as a direct descendant by affinity of decedent, she is entitled to a more favorable inheritance tax exemption and rate than if she is classified as a stranger. LRS 47:2402, 2403.
[2] § 2402 reads in part:

The following shall be exempt from the tax imposed in this Part:
(1) ... legacies ... to a direct descendant by blood or affinity, ascendant, or surviving spouse of a decedent, as follows: [$15,000 if death occurs in 1985] * * *
(2) ... legacies ... to a collateral relation of decedent, (including brothers or sisters by affinity) to the amount or value of one thousand dollars.
(3) Legacies ... to a stranger, to the amount or value of five hundred dollars.
(4) All legacies ... to charitable, religious or educational institutions located within the State of Louisiana. * * *
[3] § 2403 reads in part:

A. The tax upon every ... legacy, ... in favor of a direct descendant by blood or affinity, ascendant, or surviving spouse of a decedent shall be computed as follows: * * *
B. The tax upon every ... legacy, ... to a collateral relation, including brothers or sisters by affinity, shall be computed as follows: * * *
C. The tax upon every legacy or donation or gift made in contemplation of death to a stranger shall be computed as follows: * * *
[4] Courts in at least four states follow this rationale. See, e.g., Farnsworth v. Iowa State Tax Commission, 257 Iowa 280, 132 N.W.2d 477 (1965); Depositors Trust Company of Augusta v. Johnson, 222 A.2d 49 (Me.1966); In re Estate of Iacino, 189 Colo. 513, 542 P.2d 840 (1975); and In re Ehler's Estate, 53 Wash.2d 679, 335 P.2d 823 (1959), in which the court applied its Bordeaux holding to facts involving a marriage dissolved by divorce rather than death.