527 So.2d 417 (1988)
SUCCESSION OF John W. ZARING.
No. 88-CA-0013.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1988.
Kenneth J. Servay, Gordon O. Ewin, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for plaintiff.
Suzanne K. Sasser, Leon Harrel, Atty. for the Secretary of the Dept. of Revenue *418 and Taxation, State of La., Baton Rouge, for defendant.
Before WARD, WILLIAMS and ARMSTRONG, JJ.
WARD, Judge.
The issue in this appeal is whether, for inheritance tax purposes, the affinity between a person and his spouse's child by a previous marriage ends upon the death of the spouse.
The facts have been agreed to by the parties. In 1936, John W. Zaring married Eleanor Peterman, who had five children from a previous marriage. No children were born of the marriage of John and Eleanor Zaring, and John Zaring treated his five stepchildren as his own children. Eleanor predeceased John Zaring, and he died on January 27, 1987.
In his will, John Zaring named Barbara Hardin, one of his stepchildren as his universal legatee. Mrs. Hardin died very shortly after Zaring, and her daughter, Eleanor Saxman, qualified as the Dative Testamentary Executrix for the Zaring succession and petitioned to probate the statutory will of John Zaring.
The inheritance tax return filed by Mrs. Saxman listed the universal legatee, Mrs. Hardin, as Zaring's stepdaughter and utilized the exemption and tax rate provided in La.R.S. 47:2402(1) and 2403(A) for legacies to those classified as direct descendants by affinity. The Louisiana Department of Revenue and Taxation took the position, however, that because the affinity Mrs. Hardin shared with Zaring ended when her mother predeceased Zaring, Mrs. Hardin should be classified as a "stranger" under La.R.S. 47:2402(3) and 2403(C), and therefore entitled to less favorable tax treatment. Thus, according to the Department, Mrs. Saxman owes additional inheritance taxes for Zaring's succession.
The District Court upheld the Department's position, ordering Mrs. Hardin's legacy subject to the exemption and tax rate applicable to "strangers". Mrs. Saxman, on behalf of Zaring's succession, appealed this judgment. We reverse.
La.R.S. 47:2402 and 2403 establish three classifications for the assessment of taxes on inheritances, legacies, donations and gifts made in contemplation of death. The first class, consisting of the decedent's direct descendants by blood or affinity, ascendants and surviving spouse, is entitled to the highest exemption and the lowest tax rate. The second class, collateral relations, including brothers or sisters by affinity, is entitled to a lower exemption and taxed at a higher rate. The third class, strangers, is given the lowest exemption and taxed at the highest rate.
Although "affinity" is not specifically defined in the tax statutes, the parties do not dispute that a stepparent and stepchild are related by affinity at least during the marriage of the stepparent and the child's natural parent. The dispute is whether affinity endures after the death of the natural parent. Essentially, the Department's interpretation of these tax statutes is that a legacy to a child from a previous marriage of a spouse should be entitled to the most favorable inheritance tax treatment if the child's natural parent dies after the stepparent but entitled to the least favorable treatment if the natural parent dies before the stepparent. We believe this interpretation is unreasonable given the absence of any express limitation on the endurance of "affinity" in either the tax statutes or common use of the word, the lack of authority for this interpretation, as well as the nature of the legacy at issue.
Affinity has been described generally in civil law as the relationship which exists between a person and the relatives of his spouse. See, Garnett v. Dept. of Revenue & Taxation, 519 So.2d 373 (La.App. 2nd Cir.), writ denied 521 So.2d 1156 (La.1988). Plainol elaborated on the endurance of this relationship:
Does this relationship cease with the marriage which created it? There is a saying: `My daughter is dead, hence, my son-in-law is dead.' But this should not be taken as an absolute rule; it is only true as far as certain effects of the relationship by marriage are concerned.... But the relationship itself is not gone ... *419 1 M. Plainol, Treatise on the Civil Law, pt. 1 no. 657, p. 393-4 (12th ed. La.St.L.Inst. trans. 1959).
We reject the Department's interpretation of Plainolthat affinity is a civil effect of marriage which ends upon the dissolution of the marriage. Plainol explicitly observed that the affinity, the relationship, does not end when the marriage ends.
Under La.C.C. art. 11 we are bound to interpret words in statutes in accordance with their general and popular use. We are unable to locate support for the Department's position in dictionary definitions of "affinity." Rather, the common meaning of affinity, while clearly encompassing the stepparent/stepchild relationship, does not limit the endurance of the affinity to the existence of the marriage which created the relationship.
The Department's position is clearly contrary to decisions in which courts have been called upon in inheritance tax controversies to determine the endurance of this type of relationship after dissolution of marriage either by death or divorce. In Garnett, supra, the Court rejected the Department's contention that an affinity ends with the termination of the marriage giving rise to the affinity. In Garnett, Bettye Garnett executed a will leaving three-fourths of her property to her daughter-in-law. The Department sought to classify this legacy as one given to a stranger, because Garnett's son and daughter-in-law were divorced several years before Garnett died. We are persuaded by the Court's holding that the daughter-in-law, even after her divorce from Garnett's son, was entitled to be classified as a descendant of Garnett by affinity.
Courts in other jurisdictions have reached the same result. See, for example, In re Bordeaux' Estate, 37 Wash.2d 561, 225 P.2d 433 (1950); Lavieri v. Commissioner, 184 Conn. 380, 439 A.2d 1012 (1981); In re Estate of Iacino, 189 Colo. 513, 542 P.2d 840 (1975); Farnsworth v. Iowa State Tax Commission, 257 Iowa 280, 132 N.W.2d 477 (1965); Depositors Trust Company of Augusta v. Johnson, 222 A.2d 49 (Me.1966).
Tax statutes must be construed strictly against the taxing authority. Collector of Revenue v. Wells Fargo Leasing, 393 So.2d 1244 (La.1981). As a general rule, when a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is adopted. Chicago Bridge & Iron Co. v. Cocreham, 317 So.2d 605 (La.1975). Thus, we are required to interpret the tax statute in favor of the taxpayerin this case, Zaring's succession. Under Louisiana law, any statute which contains language susceptible to different interpretations is to be interpreted to conform to the purpose of the law. La.C.C. art. 10. Clearly, the purpose of the tax statutes at issue is to provide an inheritance tax base and rate more favorable to step and in-law descendants than to strangers, without regard to whether the affinities arguably may end at some point. See, Garnett, 519 So.2d at 378.
Our decision in this case is reached without reference to the overwhelming evidence that there was a warm, loving, close relationship between Zaring and his stepdaughter, Mrs. Hardin, both before and after Mrs. Zaring's death. This factual evidence, we believe, is unnecessary because the mere bequest to a stepchild, a completely voluntary act, is the most powerful and persuasive indication of the affinity, in its common meaning, which existed between the testator and the legatee.
We hold that a stepchild remains a stepchild for inheritance tax purposes after the dissolution of the marriage between the child's natural parent and his stepparent. Accordingly, the judgment of the Trial Court, requiring Mrs. Hardin's legacy taxed at the rate and subject to the exemption for legacies to strangers, is reversed.
REVERSED.