## IN RE THE ADOPTION OF BABY Z.*

Superior Court

Memorandum filed April 24, 1996

---

* In accordance with the spirit and intent of General Statutes § 45a-754, the names of the parties involved in this appeal are not disclosed.

AUSTIN, J. This is an appeal from a decision of the Probate Court for the district of Ledyard denying the petitioners' petition to adopt Baby Z. The two fundamental issues presented in this case are ones of first impression; namely (1) whether the adoption statutes of this state allow adoption by two unmarried parties, and (2) where one petitioner is the biological parent, whether adoption by the petitioners would necessarily terminate the biological parent's parental status. More particularly, the question raised in the present appeal is whether the laws of this state permit the adoption of a child by the same sex cohabitating partner of the natural mother and if so, whether this can be accomplished without terminating the biological mother's parental rights.

Anne and Malinda (fictitious names), the petitioners in the present case, have lived together as partners for over ten years. Together, they planned for the birth of Baby Z., who was conceived by artificial insemination,[1] and born to Anne on May 10, 1992. The petitioners, since the time of the birth of Baby Z to the present, have shared all emotional, financial and other parenting responsibilities for Baby Z.

In October, 1993, the petitioners filed a "second parent" adoption petition in the Probate Court for the district of Ledyard, asking the court to declare Malinda the legal adoptive parent of Baby Z. while at the same time protecting and preserving Anne's legal parental relationship with Baby Z.[2] The Probate Court, *Smith, J.*, denied the petition on the ground that the "case

---

[1] The parental rights of the father–sperm donor were terminated by the Groton Probate Court on April 6, 1993, prior to the time the petitioners filed their petition for adoption.

[2] The original petition for adoption was brought by Anne, the biological mother, to effectuate the adoption by Malinda, so that both would be recognized as legal parents of Baby Z.

[did] not comply with any of the existing statutory provisions for adoptions." The petitioners then filed this timely appeal.

A hearing on this matter was held before the court on January 5, 1996, at which time the court heard testimony from Anne, Malinda, Malinda's father and Barbara Nordhaus,[3] a licensed social worker and psychotherapist, as well as arguments presented by the petitioners' attorneys.

Anne testified regarding her relationship with Malinda over the past ten years and her desire to have Malinda adopt Baby Z. for the extra security it would bring to Baby Z. both emotionally and financially. During the course of the relationship, Anne and Malinda have purchased two homes, one of which is used as investment property, and the other as their primary residence. When it came to planning for Baby Z., Anne and Malinda discussed not only the changes it would bring to their lifestyle but also who would take maternity leave and who would continue to work to support the family during that time. When it comes to making decisions regarding Baby Z. and his welfare, that is also done jointly, honestly and, most importantly, in the child's best interests.[4]

Malinda testified that her only desire in obtaining the desired legal status of parent of Baby Z. was to advance

[3] Nordhaus, a licensed social worker, psychotherapist and professor in social work at the Yale Child Study Center, which is the Department of Child Psychiatry at Yale School of Medicine, was presented as an expert and was called upon to testify regarding the professional evaluation of Anne and Malinda and their relationship with Baby Z. The court accepted the proffer of Nordhaus as an expert in the field of child placement and adoption based upon her impressive credentials.

[4] It was apparent to the court that neither Anne nor Malinda were pursuing this adoption for a particular cause or to advance the greater good as they see it. Instead, Baby Z.'s long-term well-being was the paramount concern. Both Anne and Malinda admitted that they would go on living as a family regardless of this court's decision but wished formally and legally to solidify the relationship of parent and child between Baby Z. and Malinda.

his best interests and long-term emotional and financial stability and security. Malinda recognizes that her relationship with Baby Z. can be maintained through other courses of action, including a will and guardianship relationship. These alternatives, however, would not give Baby Z. the right to medical and social security benefits that would otherwise be available if Malinda is declared the legal parent of Baby Z. Malinda testified that Baby Z. calls her "Mama" and calls Anne "Mommy."

Malinda's father testified and gave this court a good overview of the love and support that this family has received from the extended family on all sides. He indicated that Baby Z. calls him "Grandpa" and that he often referred to Baby Z. as his first grandchild. In fact, he stated that he was thrilled by the birth of his first grandchild, that he enjoys taking Baby Z. on airplane rides and that he enjoys other play activities with the child as well. It was apparent that Malinda's father was very supportive of his daughter and as proud of her and Baby Z. as any father or grandfather would or could be.

Nordhaus testified about the importance of granting the adoption in terms of promoting Baby Z.'s optimum development. Nordhaus indicated that Baby Z. may not suffer any detriment in that Malinda will be part of Baby Z.'s life regardless of a court decision but indicated that Baby Z. would be disadvantaged, in her opinion, should the adoption not be granted. It was Nordhaus' experience that children who were never adopted by the "parents" they lived with did not develop their optimum potential. They were left with a feeling of being "unwanted" and thereby were developmentally deprived. "[I]t's the deficit that you introduce unnecessarily. And it's the failure to create optimal conditions, and that's not desirable. What is desirable for a child is to do absolutely everything possible to make optimal conditions."

When asked about her understanding of the overall policy of adoption in Connecticut, Nordhaus stated: "[T]he simple principle has to do with determining what is best for any given child. That means what will enhance any given child's capacity to reach his or her maximum potential in development. And what's important for kids is security, continuity, affectionate ties. And that is why in this case for [Baby Z.], what is of primary importance, what is central here, is how, by allowing him to be legally adopted by [Malinda] we enhance the possibility of [the child] reaching . . . maximum developmental potential. In our family lives and in our societal life, that is our—that was our goal in respect to the raising of our children, to do everything we possibly can to enhance their development." It was Nordhaus' expert opinion that the adoption of Baby Z. by Malinda would advance Baby Z.'s maximum developmental potential. "[A]doption is really the only permanent way to safeguard the ties. It's the ideal way; it's the best way. It's the best thing for [Baby Z.]." In summary, based on her expertise and evaluation of Anne, Malinda and Baby Z., it was Nordhaus' opinion that it would be in Baby Z.'s best interests for this court to grant the petition for his adoption.

The petitioners argue that "[t]he probate court erred by failing to adequately ground its statutory analysis in the two overarching principles of Connecticut's adoption law; first, that the state's adoption provisions '*shall be liberally construed* in the best interests of any child for whom a petition is filed.' C.G.S. § 45a-706 . . . and, second, that it is the '*best interests of the child*' that provides the core, substantive rule by which a court should determine whether or not an adoption petition is granted, C.G.S. § 45a-727 (c) (2) . . . ." (Emphasis in original.)

The petitioners argue further that the adoption can proceed under General Statutes § 45a-727 as an adoption of a minor child related to the adopting parents,

or that it can proceed through a referral to the adoption review board. In addition, the petitioners argue that the adoption can proceed as a stepparent adoption. The petitioners also posit that denying the adoption raises serious constitutional problems and that it would be inconsistent with the growing trend emerging in other states with adoption laws similar to Connecticut's, which have allowed adoptions under similar circumstances.

It is noted at the outset that this appeal is without opposition and that neither the state nor the Probate Court has chosen to appear.

I

JURISDICTION AND STANDARD OF REVIEW

General Statutes § 45a-186 provides in pertinent part that "[a]ny person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may appeal therefrom to the Superior Court . . . for the judicial district in which such court of probate is located . . . ." In the present case, there is no question that the petitioners are aggrieved, in the classical sense of that word, by the decision of the Probate Court.

Although the Probate Court is not an administrative agency but a court of limited jurisdiction; *Marcus' Appeal from Probate*, 199 Conn. 524, 528, 509 A.2d 1 (1986); it is also a court of specialized jurisdiction. In Connecticut, "the Probate Court, by virtue of its long-standing statutory authority, has exclusive subject matter jurisdiction over matters involving the validity of wills and the settlement of estates." *Dunham* v. *Dunham*, 204 Conn. 303, 328, 528 A.2d 1123 (1987). Over the years, its jurisdiction has been expanded, most recently in 1993. See Public Acts 1993, No. 93-279, §§ 6

and 7. It also has concurrent jurisdiction with the Superior Court over petitions to terminate parental rights; General Statutes §§ 45a-706 through 45a-719; "a most serious and sensitive judicial action." (Internal quotation marks omitted.) *In re Baby Girl B.*, 224 Conn. 263, 279, 618 A.2d 1 (1992).

"In an appeal from probate, the trial court exercises the right to make an independent and de novo determination of the issue involved, without regard to the result reached by the Probate Court." *Bristol* v. *Brundage*, 24 Conn. App. 402, 407, 589 A.2d 1 (1991). "An appeal from a Probate Court to the Superior Court is not an ordinary civil action. *Slattery* v. *Woodin*, 90 Conn. 48, 50–51, 96 A. 178 (1915); *Silverstein's Appeal from Probate*, 13 Conn. App. 45, 53, 534 A.2d 1223 (1987). "When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or common law jurisdiction, but of a Probate Court. . . . The function of the Superior Court in appeals from a Probate Court is to take jurisdiction of the order or decree appealed from and to try that issue de novo. . . . Thereafter, upon consideration of all evidence presented on the appeal which would have been admissible in the probate court, the superior court should exercise the same power of judgment which the probate court possessed and decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the probate court." (Citations omitted; internal quotation marks omitted.) *Kerin* v. *Stangle*, 209 Conn. 260, 264, 550 A.2d 1069 (1988).

II

STATUTORY FRAMEWORK OF ADOPTION
IN CONNECTICUT

"The adoption of a minor child and the giving of it in adoption to persons other than its natural parents

is a procedure, and creates a status, unknown to the common law. Being of purely statutory origin, a legal adoption results if the statutory procedure is followed but fails if any essential requirement of the statute is not complied with. *Goshkarian's Appeal*, 110 Conn. 463, 465 [148 A. 379 (1930)]." *Killen* v. *Klebanoff*, 18 Conn. Sup. 177, 180 (1952), aff'd, 140 Conn. 111, 98 A.2d 520 (1953). General Statutes (Rev. to 1995) § 45a-724[5]

[5] General Statutes (Rev. to 1995) § 45a-724 provides: "Who may give child in adoption. (a) The following persons may give a child in adoption:

"(1) A statutory parent appointed under the provisions of section 17a-112, section 45a-717 or section 45a-718 may, by written agreement, subject to the approval of the court of probate as provided in section 45a-727, give in adoption to any adult person any minor child of whom he is the statutory parent; provided, if the child has attained the age of twelve, the child shall consent to the agreement.

"(2) Subject to the approval of the court of probate as provided in section 45a-727, any parent of a minor child may agree in writing with his or her spouse that the spouse shall adopt or join in the adoption of the child; if that parent is (A) the surviving parent if the other parent has died; (B) the mother of a child born out of wedlock, provided that if there is a putative father who has been notified under the provisions of section 45a-716, the rights of the putative father have been terminated; (C) a former single person who adopted a child and thereafter married; or (D) the sole guardian of the person of the child, if the other parent's parental rights have been terminated or the other parent has been removed as guardian of the person before October 1, 1973.

"(3) Subject to the approval of the court of probate as provided in section 45a-727, the guardian or guardians of the person of any minor child who is free for adoption in accordance with section 45a-725 may agree in writing with a blood relative descended from a common ancestor not more than three generations removed from the child that the blood relative shall adopt the child. For the purposes of this subsection 'blood relative' shall include, but not be limited to, the father of an illegitimate child who has been adjudged by a court of competent jurisdiction to be the father of the child, or who has acknowledged his paternity under the provisions of section 46b-172a, with further blood relationship to the child determined through the father.

"(b) If all parties consent to the adoption under subdivisions (2) and (3) of subsection (a) of this section, then the application to be filed under section 45a-727 shall be combined with the consent termination of parental rights to be filed under section 45a-717. An application made under subdivisions (2) and (3) of subsection (a) of this section shall not be granted in the case of any child who has attained the age of twelve without the child's consent."

sets forth the three groups that may give a child in adoption including (1) a statutory parent, (2) a stepparent and (3) a blood relative. The petitioners argue that the court must liberally construe this statute and must be guided by the child's best interests. The court agrees that the adoption statutes are to be liberally construed[6] and that the touchstone of adoption is the best interests of the child, but it is also mindful that it must comply with the adoption statutes or run the risk that the adoption will one day be found to be void for failure to comply with the statutes. See *Killen* v. *Klebanoff*, supra, 180. This court has no doubt, after hearing the parties' testimony and the testimony of Nordhaus, and, after thoroughly reviewing the legislative history of the adoption statutes and the entire record of the Probate Court and its decision, that the present adoption would be in Baby Z.'s best interests. The court finds that the petitioners, however, do not fall within any of the three statutory categories of who may give a child in adoption, nor any other statutory provision that would allow the adoption. Unlike other jurisdictions, Connecticut's adoption statutes were narrowly drafted because of the legislature's concerns with "black market babies."[7] The court recognizes that the case before it was not one the legislature intended to prevent but that is the purpose for which the adoption review board exists, specifically, to review hardship cases which do not fall within

[6] General Statutes (Rev. to 1995) § 45a-706 sets forth the rule of construction for various provisions relevant to adoption and provides in pertinent part: "[T]he provisions of sections . . . 45a-706 to 45a-709, inclusive, 45a-715 to 45a-718, inclusive, 45a-724 to 45a-734, inclusive, 45a-736, 45a-737 . . . shall be liberally construed in the best interests of any child for whom a petition has been filed under said sections."

[7] The court thoroughly reviewed the legislative history of several of the adoption statutes in order to determine whether it could grant the petition and found that the legislature purposefully drafted very narrow adoption statutes. The court also reviewed statutes from other states that have allowed "second parent" adoptions and, as discussed later in this opinion, found that the statutes in those jurisdictions are much broader in scope than those of this state.

the three narrow categories of who may adopt in this state. For this reason, the petitioners' petition will ultimately be remanded to the Probate Court with direction to refer the matter to the adoption review board for waiver of the statutory criteria of "statutory parent." The petitioners will then be free to accomplish the ultimate beneficial result of allowing Malinda to adopt Baby Z. Once the waiver is obtained, this court sees no bar to the adoption and is in agreement with other jurisdictions that the adoption should then proceed in such a way that the biological parent's parental rights would not need to be terminated in order to consider Baby Z. free for adoption. Connecticut's statutory provisions for "stepparent" adoptions would not require the termination of the biological parent's parental rights and the court agrees with the reasoning of other jurisdictions that have analogized the situation before it to that of the stepparent situation at least insofar as termination of the biological parent's parental rights is concerned. Having set forth the framework for this decision, the court will analyze the arguments set forth by the petitioners and provide the details of its statutory analysis.

## A

### Adoption Pursuant to § 45a-724

In the state of Connecticut, adoptions are governed by General Statutes §§ 45a-724 through 45a-737. The three types of adoptions allowed under the statutes are (1) statutory parent adoptions (§ 45a-724 [a] [1]), (2) stepparent adoptions (§ 45a-724 [a] [2]), and (3) blood relative adoptions (§ 45a-724 [a] [3]). Subject to the approval of the Probate Court, a statutory parent may give a child in adoption to "any adult person." A statutory parent is defined by General Statutes (Rev. to 1995) § 45a-707 (f) to mean "the commissioner of children and families or the child-placing agency appointed by

the court for the purpose of giving a minor child or minor children in adoption." Clearly, the petitioners in the present case do not meet this statutory definition.

The Probate Court found that not only was a statutory parent lacking in the present case, but also that none could be appointed because the appointment of a statutory parent requires that the child be "free for adoption." General Statutes § 45a-718. Under General Statutes § 45a-725, a child is free for adoption when "[t]he child has no living parents . . . the parents were removed as guardians of the person . . . all parental rights have been terminated under Connecticut law . . . ." The Probate Court went on to state that Baby Z. was "not free for adoption because his mother's parental rights have not been terminated" and concluded that "[t]he provisions concerning statutory parent adoption [did] not apply to this case."

Although this court agrees with the Probate Court insofar as the conclusion that the present case is not one involving a statutory parent adoption, it disagrees with the Probate Court's narrow reading of when a child is free for adoption. The adoption laws of this state are to be liberally construed to promote the best interests of the child. As the Probate Court and the department of children and families (department) clearly acknowledge, the adoption of Baby Z. by Malinda is in the best interests of Baby Z. If the adoption review board waives the statutory parent requirement, the statutes should be liberally construed to allow this adoption as it would be allowed in the analogous situation of a stepparent adoption. This would further the clear legislative purpose of the adoption statutes, namely promoting the best interests of the child.

In terms of a blood relative adoption, a guardian or guardians of the person of a minor may give a child in adoption to "a blood relative descended from a common

ancestor not more than three generations removed from the child" subject to approval of the Probate Court. General Statutes (Rev. to 1995) § 45a-724 (a) (3). The mother and father of each child are the guardians of the person of that child. See General Statutes § 45a-606. In the present case, Anne is the sole guardian of the person of Baby Z. There has been no claim made by the petitioners that Malinda is a blood relative of Baby Z. The adoption, therefore, is not a blood relative adoption within the meaning of the statute.

The last form of adoption available in Connecticut is a stepparent adoption. Subject to Probate Court approval, a parent of a minor child "may agree in writing with his or her spouse that the spouse shall adopt or join in the adoption of the child . . ." General Statutes § 45a-724 (a) (2). Thus, the issue becomes whether Malinda can be considered the "spouse" of Anne within the meaning of the statute.

"Statutory language is to be given its plain and ordinary meaning unless such meaning is clearly at odds with the legislative intent." *State* v. *Taylor*, 153 Conn. 72, 82, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966). "The intention of the legislature, expressed in the language it uses, is the controlling factor and the application of common sense to the language is not to be excluded." *United Aircraft Corp.* v. *Fusari*, 163 Conn. 401, 410–11, 311 A.2d 65 (1972). "In the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language. General Statutes § 1-1 (a)." *Unigard Ins. Co.* v. *Tremont*, 37 Conn. Sup. 596, 599, 430 A.2d 30 (1981). General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and

understood accordingly." The term spouse has been defined to mean "a man or woman joined in wedlock; married person; husband, wife." Webster's Third New International Dictionary. Because the petitioners in the present case are not married, they are not spouses within the meaning of the statute.

"The stepparent-stepchild relationship is one based on affinity. Affinity is the connection existing in consequence of marriage between each of the married persons and the kindred of the other. *In re Bordeaux's Estate*, 37 Wash. 2d 561, 565, 225 P.2d 433 (1950); annot., 26 A.L.R.2d 271. *Lavieri* v. *Commissioner of Revenue Services*, 184 Conn. 380, 383, 439 A.2d 1012 (1981). Affinity is distinguished from consanguinity, which is relationship by blood. *In re Bordeaux's Estate*, supra, 565." (Internal quotation marks omitted.) *Remington* v. *Aetna Casualty & Surety Co.*, 35 Conn. App. 581, 587, 646 A.2d 266 (1994). In the present context, the family does not meet the definition of affinity by virtue of the lack of marriage between the petitioners. The court notes, however, that this is an extremely narrow view of the definition of family which has been, in other contexts, recognized as evolving and changing. As the court explained in *Michaud* v. *Wawruck*, 209 Conn. 407, 415, 551 A.2d 738 (1988), "[t]raditional models of the nuclear family have come, in recent years, to be replaced by various configurations of parents, stepparents, adoptive parents and grandparents. . . . We are not prepared to assume that the welfare of children is best served by a narrow definition of those whom we permit to continue to manifest their deep concern for a child's growth and development." (Citations omitted.) In keeping with the liberal construction directives of the adoption laws of this state and the fundamental purpose of adoption, that is, promoting the best interests of the child, the present situation is most analogous to a stepparent adoption but fails to meet the standards by which

"stepparent" and "spouse" have been defined by our Supreme Court. The adoption, therefore, cannot proceed as a stepparent adoption but, the court once again notes that upon waiver of the statutory parent adoption provision, the parties' situation is most analogous to a stepparent adoption and, with liberal construction, the biological rights of the mother, Anne, need not be terminated so as to "free" Baby Z. for adoption.

The petitioners have argued that the paramount concern should be the best interests of Baby Z. and that the "statutes should be read and interpreted as a whole, always keeping in mind their purpose to aid the state's children." In support of this proposition, the parties draw the court's attention to *Turner* v. *Turner*, 219 Conn. 703, 712–13, 595 A.2d 297 (1991), where it was stated that a court must "construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Citations omitted.) In promulgating the adoption statutes, the legislature sought to attain a result that would limit, if not eliminate, the possibility of "black market adoptions."[8] In doing so, the legislature purposefully drafted very narrow legislation limiting who may give a child in adoption to each of the above three types. The one, and in this court's opinion the only,

---

[8] In *State* v. *Parmalee*, 197 Conn. 158, 161–62, 496 A.2d 186 (1985), the court stated that "[i]dentifying the societal problems which the legislature sought to address may be particularly helpful in determining the true meaning of the statute." With this in mind, the court read the legislative history of § 45a-724 and found that the societal problem feared by the legislature was the potential for "black market babies" that was being experienced in other jurisdictions. The legislature clearly intended to draft narrow legislation and has apparently accomplished that goal. The legislature, however, also realized that the legislation was narrow and drafted additional legislation establishing an adoption review board that could waive the statutory parent requirement in cases that did not violate the public policy of this state.

way for the petitioners to bring the petition is for them to apply to the adoption review board for waiver of the adoption provision of "statutory parent" adoption. See General Statutes § 45a-764 (a) which provides: "Notwithstanding the provisions of section 45a-727, the Adoption Review Board may, upon application, notice and hearing as hereinafter provided, for cause shown that it is in the best interests of the minor child, waive the requirement that the minor child be placed by the Commissioner of Children and Families or a child-placing agency."[9]

Once the waiver has been obtained,[10] the adoption statutes can be construed "in a manner that will not thwart [their] intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." *Turner* v. *Turner*, supra, 219 Conn. 712–13. The court finds that requiring Anne to terminate her parental rights before Baby Z. can be adopted by Malinda would thwart the intended purpose of the adoption legislation and lead to an absurd result.

Based on the testimony that took place over the course of almost an entire day and the report of the department, the court finds that the adoption of Baby Z. by Malinda would be in Baby Z.'s best interests. That is precisely why the court is remanding the case to the Probate Court with direction to proceed with the

[9] "Any judge of probate who has had presented to him an application for adoption which may not proceed because the child has not been so placed may apply in writing to the Adoption Review Board for a waiver of such requirement." General Statutes § 45a-764 (b).

[10] The court is confident that waiver will be obtained because the only impediment to that waiver would be that "the adoption proceeding would violate the public policy of the state against the obtaining of children by illegal means for adoption purposes." The present petition for adoption does not violate the public policy of this state and instead, promotes the legislative purpose and intent of furthering the best interests of Baby Z.

necessary step of referral to the adoption review board for waiver of the statutory requirement of who may give a child in adoption. Further, the Probate Court is directed, assuming that waiver is granted, to grant the petition for adoption in keeping with the statutes on stepparent adoption so as not to disturb the parental rights of the biological mother, Anne.

B

Adoption Pursuant to General Statutes
(Rev. to 1995) § 45a-727

The petitioners argue that the present adoption may proceed as an adoption of a minor child related to the adopting parents pursuant to § 45a-727.[11] Section 45a-727 sets forth the general procedural requirements that must be followed by parties filing an application for adoption. The petitioners argue that they have met all of the requirements of the statute and that the adoption will advance the best interests of Baby Z.[12]

---

[11] General Statutes (Rev. to 1995) § 45a-727 provides in pertinent part: "(a) (1) Each adoption matter shall be instituted by filing an application in a court of probate, together with the written agreement of adoption, in duplicate. One of the duplicates shall be sent forthwith to the commissioner of children and families.

"(2) The application shall incorporate a declaration that to the best of the knowledge and belief of the declarant there is no other proceeding pending or contemplated in any other court affecting the custody of the child to be adopted, or if there is such a proceeding, a statement in detail of the nature of the proceeding and averring that the proposed adoption would not conflict with or interfere with the other proceeding. . . .

"(3) An application for the adoption of a minor child not related to the adopting parents shall not be accepted by the court of probate unless the child sought to be adopted has been placed for adoption by the commissioner of children and families or a child-placing agency, except as provided by section 45a-764, and the placement for adoption has been approved by the commissioner or a child-placing agency. . . .

"(4) The application and the agreement of adoption shall be filed in the court of probate for the district where the adopting parent resides or in the district where the main office or any local office of the statutory parent is located. . . ."

[12] The petitioners argue that they have fully complied with all the procedural requirements set forth in General Statutes (Rev. to 1995) § 45a-727

The parties note that the only conceivable procedural impediment to the adoption is General Statutes (Rev. to 1995) § 45a-727 (a) (3), which provides in pertinent part that "[a]n application for the adoption of a minor child not related to the adopting parents shall not be accepted by the court of probate unless the child sought to be adopted has been placed for adoption by the commissioner of children and families or a child-placing agency, except as provided by section 45a-764, and the placement for adoption has been approved by the commissioner or a child-placing agency . . . ." The petitioners argue that the petition to adopt Baby Z. is an application to adopt a minor child "related to" both of them as opposed to the adoption of a child that has been placed in the home of strangers. The petitioners urge the court to apply liberal construction to this provision to conclude that Baby Z. is related to Malinda.

There is no statutory definition of the term "related to" within the adoption statutes. The rules of construction, however, dictate that "[s]tatutory language is to be given its plain and ordinary meaning unless such meaning is clearly at odds with the legislative intent. . . . The intention of the legislature, expressed in the languge it uses, is the controlling factor and the application of common sense to the language is not to be excluded. . . . In the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language. General Statutes § 1-1 (a)." (Citations omitted; internal quotation marks omitted.) *Unigard Ins. Co.* v. *Tremont,* supra, 37 Conn.

---

and, that being the case, the court must then conduct a hearing and either "deny the application, enter a final decree approving the adoption if it is satisfied that the adoption is for the best interests of the child or order a further investigation . . . ." General Statutes (Rev. to 1995) § 45a-727 (c) (2). The petitioners set forth several compelling reasons why the adoption is in Baby Z.'s best interests. The court, however, will not address those arguments as it has determined that the procedural requirements of § 45a-727 (a) (3) have not been met.

Sup. 598–99. General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." The term "related" has been defined to mean "connected; associated . . . [c]onnected by kinship, common origin, or marriage . . . [h]aving a close harmonic connection." American Heritage Dictionary (3d Ed. 1992). Malinda is certainly connected to Baby Z. and undoubtedly has a close harmonic connection to Baby Z., but in reading the adoption statutes as a whole, the legislature in all probability used the term "related" to mean connected by kinship, common origin or marriage. Such a relationship does not presently exist between Malinda and Baby Z.

This, however, is not the only reason why the adoption cannot proceed pursuant to § 45a-727. This statute is a procedural statute and does not set forth who may adopt or be adopted. The statute only sets forth the procedural requirements and exceptions to the rule. It is noted that even if all the procedural requirements were met, which the court has determined is not the case, this statute does not set forth the statutory basis of who may adopt or be adopted or who may give a child in adoption within this state.

C

Waiver of the Statutory Parent Requirement

The petitioners argue, correctly so, that the adoption can alternatively proceed under § 45a-764. They deem this step unnecessary, but the court respectfully disagrees. General Statutes (Rev. to 1995) § 45a-727 (a) (3) provides in pertinent part that "[a]n application for the adoption of a minor child not related to the adopting parents shall not be accepted by the court of probate

unless the child sought to be adopted has been placed for adoption by the commissioner of children and families or a child-placing agency, except as provided by section 45a-764 . . . ."[13] As stated previously, the court agrees that this adoption can proceed by referral to the adoption review board for waiver of the statutory parent requirement of § 45a-724 (a) (1).

The court is remanding this matter back to the Probate Court for referral to the adoption review board. Although this court sits as a Probate Court upon hearing the appeal and can itself send the matter to the adoption review board, the court finds that the Probate Court has greater expertise in this area and, therefore,

---

[13] General Statutes § 45a-764 sets forth the procedural nuances for notice and hearing by the adoption review board as well as the powers of the board as follows: "(a) Notwithstanding the provisions of section 45a-727, the Adoption Review Board may, upon application, notice and hearing as hereinafter provided, for cause shown that it is in the best interests of the minor child, waive the requirement that the minor child be placed by the Commissioner of Children and Families or a child-placing agency.

"(b) Any judge of probate who has had presented to him an application for adoption which may not proceed because the child has not been so placed may apply in writing to the Adoption Review Board for a waiver of such requirement.

"(c) Upon receipt of the application, the chairman of the board shall set a time and place for a hearing and cause notice to be sent by registered or certified mail to the judge of probate and to all parties entitled to notice in the adoption proceeding.

"(d) The hearing shall be held not less than ten days nor more than thirty days after the receipt of the application. The parties entitled to notice shall be given notice at least ten days prior to the hearing.

"(e) Any party to the adoption proceedings shall have the right to present such evidence as is deemed necessary and relevant to the board. After hearing the evidence the board may deny the application or approve the application in which case the chairman shall notify the court of probate that the adoption may proceed and that the requirement of placement by the Commissioner of Children and Families or a child-placing agency is waived.

"(f) If the court of probate thereafter grants the adoption application, there shall be included in the decree a finding that the placement requirements of section 45a-727 have been waived by the Adoption Review Board.

"(g) No such waiver may be granted if the board determines that the adoption proceeding would violate the public policy of the state against the obtaining of children by illegal means for adoption purposes."

remands the matter with instruction to refer the petition to the adoption review board. Once waiver is obtained, the adoption should proceed in a manner consistent with protecting the biological mother's parental rights. To do otherwise would lead to absurd results and thwart the legislative intent of the adoption statutes which is to promote the best interests of the child. See *In re B.L.V.B.*, 160 Vt. 368, 375, 628 A.2d 1271 (1993) (where court stated that "[b]y allowing same-sex adoptions to come within the step-parent exception of [Vt. Stat. Ann. tit. 15] § 448, we are furthering the purposes of the statute as was originally intended by allowing the children of such unions the benefits and security of a legal relationship with their de facto second parents"); see also *Adoption of Two Children by H.N.R.*, 285 N.J. Super. 1, 7–8, 666 A.2d 535 (1995) ("we conclude that the stepparent exception to the natural parent's termination of rights should not be read literally and restrictively where to do so would defeat the best interests of the children and would produce a wholly absurd and untenable result"); *Matter of Adoption of Child by J.M.G.*, 267 N.J. Super. 622, 628, 632 A.2d 550 (1993) ("J.M.G. should be treated as a stepparent as a matter of common sense, and in order to protect the child's interests in maintaining her relationship with her biological mother").

In keeping with the overarching principles of adoption in this state, including liberal construction of the statutes and the best interests of the child, upon waiver of the statutory parent requirement of § 45a-724 (a) (1), the adoption should proceed so as not to require the termination of Anne's parental rights. In this respect, the court agrees with the petitioners' argument that this adoption should proceed as a stepparent adoption.

### III

### CONSTITUTIONAL PROBLEMS RAISED IF ADOPTION PETITION IS DENIED

The petitioners argue that denial of the adoption in the present case presents serious equal protection

issues. It is unnecessary to address the constitutional concerns that the petitioners posit would result from denying the proposed adoption because the court is not denying the adoption but instead, simply remanding with direction to the Probate Court to apply for waiver of the statutory parent requirement of § 45a-724 (a) (1) and, upon receipt of that waiver, to grant the adoption so as not to require the termination of the biological mother's parental rights. Simply put, the Probate Court, upon waiver of the statutory requirements, is to grant the adoption pursuant to § 45a-724 (a) (1) and General Statutes § 45a-733.[14]

## IV

## THE GROWING TREND EMERGING FROM OTHER STATES

The petitioners' final argument is that the court should grant the adoption so as to be "consistent with the growing and persuasive trend emerging from other states, all of which have adoption laws similar to Connecticut's." The court does not disagree with the petitioners' contention that "second parent adoptions involving lesbian or gay couples have been routinely taking place in other states." The court disagrees, however, with the contention that these other states have adoption laws similar to Connecticut. For example, the petitioners rely on adoption laws from New York, Vermont and the District of Columbia to argue in favor of the proposition that the adoption at issue in the present case has been allowed in other states. The adoption laws of those jurisdictions, however, are much broader in scope than the adoption laws of this state. The applicable adoption statute in the state of New York for

---

[14] The court is not finding this situation to be a stepparent adoption, but is finding that the provisions of stepparent adoption should be applicable in a case, such as this one, in which a second parent seeks to adopt the child of the nonspouse.

instance, provides in pertinent part that: "An adult unmarried person or an adult husband and his adult wife together may adopt another person. An adult married person who is living separate and apart from his or her spouse pursuant to a decree or judgment of separation or pursuant to a written agreement of separation subscribed by the parties thereto and acknowledged or proved in the form required to entitle a deed to be recorded or an adult married person who has been living separate and apart from his or her spouse for at least three years prior to commencing an adoption proceeding may adopt another person; provided, however, that the person so adopted shall not be deemed the child or stepchild of the non-adopting spouse for the purposes of inheritance or support rights or obligations or for any other purposes. An adult or minor husband and his adult or minor wife together may adopt a child of either of them born in or out of wedlock and an adult or minor husband or an adult or minor wife may adopt such a child of the other spouse. No person shall hereafter be adopted except in pursuance of this article, and in conformity with section three hundred seventy-three of the social services law . . . ." N.Y. Dom. Rel. Law § 110 (McKinney 1991).

Likewise, in Vermont at the time of the commencement of the present action, the applicable adoption statute provided: "Right of adoption. A person or husband and wife together, of age and sound mind, may adopt any other person as his or their heir with or without change of name of the person adopted. A married man or a married woman shall not adopt a person or be adopted without the consent of the other spouse. The petition for adoption and the final adoption decree shall be executed by the other spouse as provided in this chapter." Vt. Stat. Ann. tit. 15, § 431 (1989) (repealed in 1995, see Vt. Stat. Ann. tit. 15A, § 1-101 et seq.).

Finally, the applicable adoption statute of the District of Columbia provides in pertinent part: "Any person may petition the court for a decree of adoption . . . ." D.C. Code Ann. § 16-302 (1981).

The statutes in these jurisdictions are much broader in scope regarding permissible adoptions than Connecticut's adoption statute. Additionally, the court looked at the adoption laws of New Jersey,[15] Wisconsin[16] and Massachusetts,[17] all of which have allowed "second parent" adoptions such as the one at issue in the present

[15] The applicable New Jersey statute on adoption provides: "Who may institute action; consent of spouse; qualifications; waiver. a. Any person may institute an action for adoption except that a married person may do so only with the written consent of his spouse or jointly with his spouse in the same action or if living separate and apart from his spouse. b. A plaintiff, at the time of the institution of the action, shall have attained the age of 18 years and shall be at least 10 years older than the child to be adopted, except that the court for good cause may waive either requirement, which waiver shall be recited in any judgment of adoption thereafter entered." N.J. Stat. Ann. § 9:3-43 (West 1994).

[16] The applicable Wisconsin statute provides: "Who may be adopted. Any minor who meets all of the following criteria may be adopted: (1) Except as provided under s.48.839 (3) (b) or if an appointment of guardianship has been made under s.48.831, a minor whose parental rights have been terminated under subch. VIII or in another state or a foreign jurisdiction. (2) A minor who is present within this state at the time the petition for adoption is filed." Wis. Stat. Ann. § 48.81 (West 1989).

Additionally, § 48.82 provides: "Who may adopt. (1) The following persons are eligible to adopt a minor if they are residents of this state: (a) A husband and wife jointly, or either the husband or wife if the other spouse is a parent of the minor. (b) An unmarried adult. (3) When practicable and if requested by the birth parent, the adoptive parents shall be of the same religious faith as the birth parents of the person to be adopted. (4) No person may be denied the benefits of this subchapter because of a religious belief in the use of spiritual means through prayer for healing. (5) Although otherwise qualified, no person shall be denied the benefits of this section because the person is deaf, blind or has other physical handicaps. (6) No otherwise qualified person may be denied the benefits of this subchapter because of his or her race, color, ancestry or national origin." Wis. Stat. Ann. § 48.82 (West 1991).

[17] The applicable Massachusetts statute provides: "Situations Where Adoption Authorized. A person of full age may petition the probate court in the county where he resides for leave to adopt as his child another person

case. These states also have much broader adoption laws than Connecticut. The court agrees, however, that the decisions from these other states are persuasive and would be applicable upon waiver of the statutory requirements from the adoption review board. Before that happens, however, the court is constrained by the legislative mandates and cannot expand the categories of adoption that may be granted in this state.

## V

## CONCLUSION

"The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. *In re Juvenile Appeal (Docket No. 9489)*, [183 Conn. 11, 15, 438 A.2d 801 (1981)], quoting *In re Adoption of Webb*, 14 Wash. App. 651, 657, 544 P.2d 130 (1975)." (Internal quotation marks omitted.) *In re Kezia M.*, 33 Conn. App. 12, 18, 632 A.2d 1112, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993). These attributes and many more clearly exist in the present case and the adoption of Baby Z. will maximize his potential for a stable and loving

younger than himself, unless such other person is his or her wife or husband, or brother, sister, uncle or aunt, of the whole or half blood. A minor may likewise petition, or join in the petition of his or her wife or husband, for the adoption of a natural child of one of the parties. If the petitioner has a husband or wife living, competent to join in the petition, such husband or wife shall join therein and upon adoption the child shall in law be the child of both. If a person not an inhabitant of this commonwealth desires to adopt a child residing here, the petition may be made to the probate court in the county where the child resides.

"The district or juvenile court may, if it appears necessary or convenient, exercise the powers authorized by this chapter, but only in respect to a pending proceeding before such district or juvenile court." Mass. Gen. Laws Ann. c. 210, § 1 (West 1994).

relationship with the two people who want to be recognized as his parents, Anne and Malinda. The court concludes that the adoption of Baby Z. by Malinda is in Baby Z.'s best interests.

For the aforestated reasons, the appeal is remanded to the Probate Court with direction to refer the matter to the adoption review board pursuant to § 45a-764. Upon waiver, the Probate Court is further directed to grant the adoption consistent with procedures for stepparent adoption so as to avoid termination of the biological mother's parental rights.